UNITED STATES of America, Plaintiff-Appellee,

v.

Steven SMITH, Defendant-Appellant.

No. 76–3430.

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1977.

Rehearing and Rehearing En Banc Denied Oct. 6, 1977.

Richard B. Marx, Miama, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

THORNBERRY, Circuit Judge:

Conducting a strip search at the Miami International Airport, Customs Agents found a large quantity of cocaine strapped to appellant's ankles. After a bench trial in the Southern District of Florida, the trial judge found appellant, Steven Smith, guilty of one count each of importation and possession with the intent to distribute 300 grams of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 841(a)(1). The court sentenced appellant to concurrent terms of two years plus a three year special parole term on each count. The thrust of the appeal is whether the trial court erred in denying Smith's motion to suppress the cocaine on the basis of his holding that reasonable suspicion supported the strip search. We affirm.

Appellant Smith arrived in Miami on a Braniff Airlines flight from Bogota, Colombia on April 15, 1976. He entered the customs line, as did the other passengers, and presented his one suitcase for inspection. The customs inspector examined the luggage and began asking the routine ques-

tions. In response to these questions, appellant stated that he had been in Colombia on a four day vacation, and that he was an unemployed truck driver with a wife and child. The inspector testified that appellant by now had become "very, very nervous" and so "very pale" that he appeared to be sick. (R. 58–59).

As a result of the nervous appearance and the responses to the questions, the inspector requested that his supervisor conduct a secondary examination.[1] They escorted appellant to a small, private room and required him to remove his clothes. The officers spotted two packets strapped to his ankles, and ordered the contents field tested. At that point they informed the defendant of his *Miranda* rights and placed him under arrest. Upon questioning by Drug Enforcement Administration Agents, appellant admitted that he purchased the cocaine in Colombia, that he was going to distribute it in the Peoria, Illinois, area, and that he had been involved with handling narcotics for some time.

Appellant raises three points. First, he claims that the trial court erred in concluding that the customs inspector had the requisite suspicion to order a strip search, and that therefore the trial court erred in denying the motion to suppress the evidence. Second, appellant insists that the trial court erred in denying suppression of statements he made before the officers advised him of his right against self-incrimination. Finally, Smith maintains that the trial court erred in not requiring the government to produce, pursuant to the court's Standing Discovery Order, the substance of his own oral statements.

## I.

Appellant relies on Ninth Circuit cases for his proposition that officers must base a strip search, even at a border, on "real suspicion" and not the "mere suspicion" of border searches in general. In *United States v. Guadalupe-Garza*, 421 F.2d 876 (9 Cir. 1970), for example, the court found the strip search illegal because the objective facts did not warrant "real suspicion". The only basis for the strip search was defendant's nervousness in answering routine questions, as well as his tendency to "shy away" and "tilt his head" when he got near the customs agent. In *Henderson v. United States*, 390 F.2d 805 (9 Cir. 1967), the Ninth Circuit threw out a strip search, which included an examination of the suspect's vagina. The customs official erroneously recollected that he had once before requested a search of this same suspect, which allegedly uncovered a gun, narcotic drugs, and marijuana. Despite the fact that a female official conducted the search in private, the court held that the search was illegal because the officers lacked the "real suspicion" required before they could order a suspect to remove her clothing.[2]

This Circuit expressly rejects the Ninth Circuit rule. Instead, we hold that a "reasonable suspicion" standard affords sufficient fourth amendment protection. *United States v. Himmelwright*, 551 F.2d 991, 995 (5 Cir. 1977). Both *Himmelwright* and the other leading Fifth Circuit strip search case,[3] *United States v. Forbicetta*,

1. Customs Officer McKenny testified that appellant fit a "smuggling profile" that Agents had developed after studying numerous previous smuggling attempts. Although the profile was not in evidence in this case, a previous court has considered it in another case arising out of Miami International Airport. *United States v. Forbicetta*, 484 F.2d 645 (5 Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2404, 40 L.Ed.2d 772 (1974). Some of the relevant indicators include the facts that a high percentage of individuals discovered in the act of attempting to smuggle cocaine at the Miami International Airport arrived on flights from Bogota, Colombia; that individuals attempting to smuggle cocaine usually carried only one suitcase and no items to declare so as to clear customs quickly; that they usually travelled alone; and that they claimed to have gone on vacation to Colombia.

2. *See also U. S. v. Johnson*, 425 F.2d 630 (9 Cir. 1970).

3. A third recent case held that a "real or reasonable suspicion" is the proper standard governing strip searches at the border. *Perel v. Vanderford*, 547 F.2d 278, 280 (5 Cir. 1977). The court did not distinguish between "real" and "reasonable", since the question was

484 F.2d 645 (5 Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2404, 40 L.Ed.2d 772 (1974), where the court likewise admitted the contraband, involved the Miami International Airport and flights arriving from Bogota. The similarities to the instant case do not end there though *Forbicetta* is perhaps the closer of the two.[4] Like Smith, Ms. Forbicetta was unemployed, was flying into Miami from Bogota after an alleged vacation, was travelling alone,[5] and was carrying only one suitcase. A further factor present in *Forbicetta* is that the young woman was wearing very loose fitting clothes that did not show her body contours even when she bent to pick up her suitcase. Past experience had indicated that this was common when a woman is carrying narcotics strapped around her waist, which is indeed precisely where Ms. Forbicetta was carrying cocaine. On the other hand, the Customs Agents reported that Smith appeared very nervous, which was apparently not the case with Ms. Forbicetta. In sum, the cases are strikingly similar and we find that the trial court tried the case on the appropriate theory: the "reasonable suspicion" standard of *Forbicetta*.[6]

## II.

Appellant insists that he should have received *Miranda* warnings before the officers began their routine questioning, instead of after the arrest. The only case he cites, however, *Chavez-Martinez v. United States*, 407 F.2d 535 (9 Cir. 1969), *cert. denied*, 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 109 (1969), destroys his argument.

---

whether it was error for the judge to fail to charge the jury that probable cause was necessary, but did note that there may be substantive differences between the "real suspicion" standard and the "reasonable suspicion" standard. *Id.* at n.1.

4. While we believe that a suspect's conformance to a "smuggling profile" can be an important consideration in determining whether "reasonable suspicion" exists, we agree with the *Himmelwright* court that normally resemblance alone will not be sufficient. *Himmelwright, supra*, at 995.

The "smuggling profile" was not in evidence here, but appellant admits that it is unclear whether it was actually in evidence in *Forbicetta* either, (Reply Brief at 5), though the *Forbicetta* court discussed it in its opinion. The point is that it is not the "smuggling profile" itself which is crucial. Rather, Customs Agents and courts must look at the facts in a given situation—suspect travelling alone and arriving from Bogota, Colombia, carrying only one suitcase, allegedly on vacation, unemployed, etc.—and determine whether or not they are truly indicative of possible smuggling.

5. Some might contend—although we do not, especially in this day and time—that a young woman travelling alone creates more suspicion than does a man in the same situation. However, a lone woman (Ms. Forbicetta) is certainly no more suspicious than a father (Smith) who takes a "vacation" without his wife and child.

6. The *Himmelwright* facts resemble ours, though there are a few more distinctions. Perhaps the most obvious difference is that Ms. Himmelwright was excessively calm during the initial questioning. She apparently did not even have the slight apprehensiveness that virtually everyone has during Customs. While that appears to us to be slim reason indeed for suspicion, that was far from the only questionable aspect. Most importantly, despite this unusual calmness on the exterior, Ms. Himmelwright gave amazingly evasive replies to questions, often changing her story completely within minutes. It was after the third change in occupation that officers decided that the complete search was in order. Other factors reasonably creating suspicion existed: Ms. Himmelwright was a woman, travelling alone, returning from a short stay in Colombia, and wearing platform shoes (a common hiding place for narcotics). Although the examining officers, also female, ultimately found the cocaine in Ms. Himmelwright's vagina, they did not make a search of the body cavities because the narcotics package protruded slightly from Himmelwright's body. We note in passing that neither *Forbicetta, Himmelwright*, nor the instant case involved a probing search of body orifices. Following the *Himmelwright* court, we make no holding as to whether or not such a search would have been constitutionally permissible. That court did hold that it was reasonable to order a strip search and reasonable to request that Himmelwright remove the suspicious object from her body. The court utilized the *Forbicetta* standard, noting that each case must necessarily turn on its own individual facts. *Himmelwright, supra*, at 995.

*See also United States v. Chiarito*, 507 F.2d 1098 (5 Cir. 1975); *United States v. Bowman*, 502 F.2d 1215 (5 Cir. 1974); *United States v. Henriquez*, 483 F.2d 65 (5 Cir. 1973), for a discussion of the appropriate standard in non-strip border search cases.

*Chavez-Martinez* held that when a customs inspector asked the suspect to go into the office under the supervision of the chief inspector while he searched her car, the suspect was not "in custody" and statements made prior to discovery of the contraband were admissible even though no *Miranda* warnings had been given.

Appellant's only possible use of *Chavez-Martinez* also weakens his "reasonable suspicion" argument. Appellant claims that as soon as the customs inspector had probable cause to arrest (equivalent to finding the contraband in *Chavez-Martinez*, we have to assume), then he should have given Smith the *Miranda* warning. Yet Smith claims that "common sense" tells us that the customs inspector must have become suspicious of him even before questioning began. Thus, he should have given the *Miranda* warning before beginning even the routine questioning. Appellant lists for us the factors that allegedly created the officer's suspicions even before routine questioning began: the smuggling profile and appellant's pale and nervous appearance. Since appellant admits that he fit the smuggling profile so closely, and was so pale and nervous, that the inspector became suspicious when he first saw him, we have not the slightest problem with affirming the trial court's determination (under any conceivable standard—Ninth Circuit or Fifth) that the customs inspector had the requisite suspicion to order a strip search.

In any case, customs agents need not read *Miranda* rights at the beginning of every routine questioning session. In the instant case, there simply was no occasion to issue the *Miranda* warning until the actual office interrogation of Smith began. There was no investigation focusing on the appellant, any more than on the literally hundreds of other people who go through customs each day. *See, e. g., Alberti v. Estelle*, 524 F.2d 1265 (5 Cir. 1975); *United States v. Carollo*, 507 F.2d 50 (5 Cir. 1975).

It is a telling fact that only after twice receiving the *Miranda* warning did appellant make the damaging admissions: that he purchased the cocaine from an unknown individual in Colombia; that he intended to distribute it in Peoria, Illinois; and that he had been involved with handling narcotics for several years.

### III.

■ Finally, the appellant insists that the trial court erred in admitting his responses to the initial questions of the customs inspector, asked while appellant was still in the routine entry line, because the government did not give appellant the content of the responses as a Standing Discovery Order required it to do.[7] Although we disapprove of the government's failure to submit defendant's responses to the routine questioning, we find no prejudice whatsoever to the defendant. Thus, it was not reversible error to admit the responses.

In *United States v. Arcentales*, 532 F.2d 1046 (5 Cir. 1976), the court declined to grant a new trial where the defendant failed to demonstrate significant prejudice. There, defendant's counsel became aware of an inculpatory statement during the government's case-in-chief, and counsel had ample time to approach the witness and hear for himself defendant's alleged statements. The court stated that this was not a case where the government secretes statements that could impeach the defendant if he decides to testify. Instead, the defense became aware of the incriminating admissions well before counsel had begun to present the defense.

That situation exists in the instant case. The government in its Memorandum of Law in Opposition to the Defendant's Motion to Suppress set forth, *inter alia*, all three of the responses appellant wanted suppressed: his occupation, his marital/parental status, and his purpose in going to

---

**7.** The trial court's Standing Discovery Order, found in the Second Supplementary Record (# 30), ordered the government to supply to the appellant copies of, *inter alia*, the "substance of any oral statement made by the defendant before or after his arrest in response to interrogation by a then known to be government agent which the government intends to offer in evidence at trial."

Colombia. The government filed this Memorandum on July 1, 1976, and mailed a copy to defense counsel that same day, to an address in the same city. The trial began more than two weeks later, on July 16, 1976. Defense counsel certainly cannot claim surprise upon hearing in the courtroom that defendant told the customs inspector those three items of information.

Appellant remarks that, despite its holding, the court in *Arcentales* chastised the prosecution, which included the same Assistant U. S. Attorney of the Southern District of Florida involved in the instant case. While the court did express condemnation of the handling of that case, and declared it would not condone a deliberate refusal to hand over a defendant's alleged statements, the statements in *Arcentales* were more inherently prejudicial than the instant ones. In *Arcentales*, the suspect's defense was that he did not know cocaine was in his suitcase, but the interpreter at the Miami Airport was going to testify at trial that the suspect at the time of interrogation made statements indicating a clear knowledge of its presence. Smith says that even if the three statements he wanted suppressed are harmless, they are almost the entire evidence of guilt. That is a substantial overstatement. The crippling statements were his admissions of direct, longstanding involvement in cocaine trade and intention to distribute the smuggled cocaine. We find no prejudice when the statements are harmless and appellant knew of their content two weeks in advance of trial.[8]

We affirm the denial of the motion to suppress this evidence.

AFFIRMED.

---

8. *See also United States v. Garcia-Godos*, 541 F.2d 1123 (5 Cir. 1976) (valid conviction even where government, in response to pretrial order, did not disclose that defendant said he understood his *Miranda* rights, since defendant was fully aware of the information himself, and the defense was in no way impaired by that nondisclosure).