**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Samuel Edward BARGER,**
**Defendant-Appellant.**

No. 78–5007
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

June 13, 1978.

Rehearing Denied Aug. 3, 1978.

---

\* Rule 18, 5 Cir.; *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Roy E. Black, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

GOLDBERG, Circuit Judge:

Defendant Samuel Edward Barger was charged in the Southern District of Florida with importation of cocaine, in violation of 21 U.S.C. § 952(a), 21 U.S.C. § 960(a)(1), and 18 U.S.C. § 2, conspiracy to import cocaine, in violation of 21 U.S.C. § 963, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. An evidentiary hearing on appellant's motion to suppress incriminating evidence was held on September 12, 1977. The motion was subsequently denied. Barger pleaded not guilty and the parties then stipulated that the same testimony introduced at the hearing would be introduced at trial. Based on the transcript of the hearing, the district court found Barger guilty on all counts.

The sole question presented on appeal is whether the customs agents had "reasonable suspicion" to conduct the limited strip search which uncovered the cocaine. We conclude that reasonable suspicion existed under the circumstances of this case and that the trial court properly denied the motion to suppress. Appellant's conviction is therefore affirmed.

I.

The facts in this case are largely undisputed. On July 3, 1977, defendant Barger arrived at Miami International Airport aboard a flight from Lima, Peru. In response to routine questioning from Customs Agent Doris Curry, the defendant stated that he was presently employed as a salesman and had been in Colombia for a few days to attend the wedding of a former karate student. Agent Curry observed that the defendant "looked a little uncomfortable, a little bulky." His three-piece suit "seemed a little bulky . . . [a]round his coat and body area; the top part of his body." As a result of these observations,

and based on her experience that Colombia was a "hot country," the agent directed Barger to a secondary examination room, where he was searched by male customs agents.

In the examination room, Barger was first asked to remove his coat, which he handed to one of the agents. The coat was patted down and the defendant was thoroughly frisked. Next the defendant was ordered to remove his vest, which was also searched. This process continued until his shirt, a T-shirt, and a vest beneath the T-shirt were removed and searched. In the inner vest the agents discovered secret pockets containing over three pounds of cocaine.[1]

## II

■ It is well settled that searches conducted at the international borders of the United States by Customs officials need not be premised upon probable cause. *See United States v. Afanador*, 567 F.2d 1325, 1328 (5th Cir. 1978); *United States v. Himmelwright*, 551 F.2d 991, 994 (5th Cir. 1977). This court has upheld strip searches at the border meeting the less exacting standard of "reasonable suspicion", *United States v. Smith*, 557 F.2d 1206, 1208 (5th Cir. 1977); *United States v. Himmelwright, supra*, 551 F.2d at 994, finding that this standard affords the full measure of protection commanded by the fourth amendment. *Id.*; *United States v. Afanador, supra*, 567 F.2d at 1328.

■ The degree of suspicion necessary to conduct a strip search at the border will, of course, vary depending on the circumstances of each case. While our precedents are instructive, each case ultimately turns on its own peculiar facts. We have recognized, for example, that "the greater the intrusion, the greater must be the reason for conducting a search that results in such

invasion." *Id.*, quoting *United States v. Love*, 413 F.Supp. 1122, 1127 (S.D.Tex.) *aff'd*, 538 F.2d 898 (5th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 501 L.Ed.2d 628 (1976). "Thus, what constitutes 'reasonable suspicion' to justify a particular search may not suffice to justify a more intrusive or demeaning search." *Afanador, supra*, 567 F.2d at 1328.

## III

■ In applying the reasonable suspicion standard to the facts of this case, we must evaluate both the circumstances giving rise to the Customs agent's suspicion and the intrusiveness of the search. As to the first element of our inquiry, we find that appellant's appearance and conduct could reasonably arouse the same degree of suspicion which was held to justify strip searches in *United States v. Smith, supra*; *United States v. Himmelwright, supra*; and *United States v. Forbicetta*, 484 F.2d 645, 646 (5th Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2404, 40 L.Ed.2d 772 (1974). In *Forbicetta* we emphasized that the defendant was traveling alone, had arrived from Colombia with only one suitcase, had gone to that country for a vacation and had no relatives there. We also stressed that the suspect was wearing a loose-fitting dress which failed to reveal the contours of her figure even when she bent down to pick up her suitcase. 484 F.2d at 647. Likewise, in *Himmelwright* we relied the fact that the defendant was traveling alone from Colombia, was wearing platform shoes, which are often used for smuggling, and gave evasive and contradictory answers when questioned about her employment. 551 F.2d at 996. Finally, in *Smith* we upheld a strip search where appellant stated that he was an unemployed truck driver with a wife and child in the United States and that he had travelled alone to Colombia on a four day vacation. Also, the agent in

---

1. After the contraband was found, the defendant was required to disrobe completely and a full strip search was conducted. Apparently, no contraband was seized during this subsequent search, and its reasonableness is not before us.

*Smith* testified that appellant was "very, very nervous" and so "very pale" that he appeared to be sick. 557 F.2d at 1208.

While the specific facts in each of these cases can be distinguished from the factors relied on by the agent in the instant case, appellant's conduct here was similarly suspicious. Appellant was returning from a short visit to Colombia, a country this court has recognized as a frequent source of illegal drugs. *United States v. Forbicetta, supra*, 484 F.2d at 646. He was carrying only a garment bag and a brief case. While he did not appear "very, very nervous," as did the defendant in *Smith*, he was observed to be physically "uncomfortable." The agent also observed that his clothing was "a little bulky . . . [a]round . . . the top part of his body." This is precisely the kind of specific observation which may constitute an articulable basis for suspicion. Indeed, in *United States v. Olcott*, 568 F.2d 1173 (5th Cir. 1978), we recently relied in part on the fact that the suspect "had been wearing heavy clothing that made her appear bulky around the midsection," 568 F.2d at 1174, in upholding a strip search. Under the circumstances, Agent Curry properly concluded that Barger might be attempting to secrete some unclaimed item or contraband under his three-piece suit.

■ We further find that the agent's observations fully justified the scope of the search in question. In *Himmelwright* we stressed that in the context of intrusive border searches, the "reasonable suspicion" standard "includes a requirement that customs officials have cause to suspect that contraband exists in the *particular place* which the officials decide to search." 551 F.2d at 995 (emphasis in original). Here the agent's suspicion centered on appellant's chest area, and the search of his person prior to the discovery of the contraband was strictly limited to his upper torso. Barger was not required to remove all his clothes at once. This pattern of search, from the less intrusive to the more intrusive, was commended in both *United States v. Afanador, supra*, 567 F.2d at 1329 n.4, and *United States v. Himmelwright, supra*, 551 F.2d at 995.[2] Such a procedure indicates a focused, rather than generalized suspicion. Given the observations of Agent Curry and Barger's responses to her questioning, the decision to conduct a strip search limited to appellant's upper torso was a reasonable one within the meaning of the fourth amendment.[3]

In sum, the search at issue in the instant case was based on "reasonable suspicion", and the district court properly denied Barger's motion to suppress. Accordingly, the judgment below is

AFFIRMED.

---

2. Agent Curry also "examined [Barger's] baggage" before the search. In many cases a "fruitless search of the person's luggage may well dispel the reasonableness of any previously held suspicions." *Himmelwright, supra*, 551 F.2d at 995. Nevertheless, in *Himmelwright*, "we specifically anticipated that cases might arise in which the very nature of the suspected crime and the reason for suspicion might justify a strip search regardless of the results of a primary luggage search . . . ." *United States v. Afanador, supra*, 567 F.2d at 1329 n.4.

This is such a case, since the agent's suspicion was specifically directed at appellant's upper body area.

3. We should point out, as we did in *Afanador, supra*, 567 F.2d at 1329 n.3, in *Himmelwright, supra*, 551 F.2d at 996, and in *Smith, supra*, 557 F.2d at 1209 n.6, that this case does *not* involve "a probing search of body orifices." *Id.* We intimate no views as to the constitutionality of more intrusive searches based solely on the information available to Agent Curry at the time of the search.