**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Scott Alan SANDLER,
Defendant-Appellant.**

No. 79–5314.

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1980.

Rehearing En Banc Granted
Oct. 7, 1980.

Roney, Circuit Judge, filed a dissenting opinion.

Gene P. Hines, Washington, D.C., for defendant-appellant.

Joel N. Rosenthal, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, RONEY and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

Appellant, Scott Sandler, appeals his conviction of knowingly and intentionally importing into the United States approximately 888 grams of cocaine in violation of 21 U.S.C. § 952(a). Because the customs officer who searched Sandler did not have reasonable suspicion upon which to base his search, the district court should have granted Sandler's motion to suppress. We reverse.

A Customs Control Officer, Joel Ariel, arrested Sandler at Miami International Airport after a pat-down search and search of Sandler's boots revealed packages of cocaine taped to each of his legs.

Ariel was on duty at Miami International Airport observing incoming international passengers in the customs baggage enclosure. He was looking for possible smugglers. He observed Sandler wearing full-cut trousers over new-looking boots and walking in a stiff manner. Ariel first saw Sandler waiting for his baggage and then again while customs inspectors examined his baggage. Ariel noted that Sandler shifted from foot to foot while waiting.

While observing Sandler, Ariel also watched several other persons. Ariel testified that he "floated" around the customs enclosure and actually observed Sandler for only thirty to sixty seconds prior to stopping and detaining him.

As a customs inspector examined Sandler's baggage, Ariel asked "How does it look?", to which the inspector replied, "It looks good, coming from South America and on tour." Ariel interpreted this reply to mean that Sandler was a good prospect for secondary examination. As Sandler removed his baggage from the inspection belt, Ariel approached him and requested a customs declaration card. Sandler presented both his declaration card and passport. The passport showed that Sandler had travelled to Bolivia and Peru. Ariel then asked Sandler to accompany him to his office where a pat-down search and an inspection of Sandler's legs were conducted. The search revealed the cocaine taped to Sandler's legs.

After a pre-trial evidentiary hearing, a United States Magistrate denied Sandler's motion to suppress the fruits of the search.

The district court adopted the magistrate's ruling. Subsequently, a jury convicted Sandler of importing cocaine.

Sandler now contends that the pat-down search was unlawful because Ariel lacked "real suspicion" on which to base his search.

■ The standard in this circuit for determining the validity of a warrantless border search is reasonable suspicion. *United States v. Smith*, 557 F.2d 1206 (5th Cir. 1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978); *United States v. Himmelwright*, 551 F.2d 991 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

Reasonable suspicion demands more than a "generalized suspicion of criminal activity such as that which is fostered, for example, when one closely resembles a 'smuggling profile'." *United States v. Himmelwright*, at 995. As outlined in *Himmelwright*, reasonable suspicion is properly created by a progression through several stages. Prior to even a minimally intrusive body search, the suspected traveler should be questioned concerning personal background and the nature of the trip and his baggage searched. In cases involving similar facts, this court has steadfastly required questioning as a necessary step in establishing reasonable suspicion. *United States v. Carter*, 590 F.2d 138 (5th Cir.), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979); *United States ·v. Smith* ; *United States v. Himmelwright.*[1]

In *Himmelwright*, we said, "Himmelwright fit a known pattern of characteristics which experience had associated with smuggling activity: she was a woman, traveling alone, wearing platform shoes, and recently returning from a short stay in Colombia." *Himmelwright*, at 995–996. The court inserted a clarifying footnote, however, which said, "it is doubtful that in this day these characteristics standing alone would justify a body search." *Id.* at 996. In that case, the critical factor which contributed to a finding of reasonable suspicion was the evasive and contradictory answers Himmelwright gave when questioned.

■ Customs Officer Ariel did not question Sandler about his background or the nature of his South American tour.[2] Without proper questioning, Ariel's generalized suspicion lacked opportunity to graduate into reasonable suspicion. Ariel observed Sandler for less than a minute. The fact that Sandler walked with a stiff gait, after a long plane ride from Bolivia, and wore full-cut trousers with new-looking boots was not unusual. Collectively, these factors do not support a reasonable suspicion for a body search. It would be antithetical to the carefully articulated law of this circuit to allow customs officers to conduct body searches of any young traveler wearing new-looking boots, arriving from South America.

While insuring the right of customs officers to assert the national interest in impeding the influx of drugs and protecting tariff revenue, the court must continually recognize its duty to protect the fourth amendment right of citizens from unreasonable searches. The reasonable suspicion standard will provide adequate fourth amendment protection only so long as it is not eroded into a generalized suspicion standard.

While Sandler raises other issues on this appeal, our holding eliminates the necessity of addressing them.

Accordingly, we hold that Customs Officer Ariel lacked reasonable suspicion to search Sandler. We reverse.

REVERSED AND REMANDED.

1. A recent Supreme Court decision, *United States v. Mendenhall*, —— U.S. ——, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), is not contra to either this line of reasoning or our holding. *Mendenhall* is factually distinguishable from *Sandler*, and we mention it only because it involves an airport search.

2. It should be noted that appellant's tour did not include a visit to the acknowledged source country for cocaine, Colombia. Given the overwhelming predominant status of Colombia, neither Bolivia nor Peru could be accurately described as source countries for cocaine.

RONEY, Circuit Judge, dissenting:

I respectfully dissent.

The authorities used by the majority for holding this customs area pat-down search unconstitutional are *United States v. Carter*, 590 F.2d 138 (5th Cir.), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979); *United States v. Smith*, 557 F.2d 1206 (5th Cir. 1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978); *United States v. Himmelwright*, 551 F.2d 991 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Significantly, each of those cases involved a strip search and in each case the searches were held valid. The language in those opinions is weak precedent, if precedent at all, to set a standard for declaring a pat-down search unlawful.

A full discussion of the cases in this Circuit and in the Supreme Court would not be fruitful here. Suffice it to say that we have not been cited to any case that reverses a pat-down search in a customs area. Even the strip searches in airport customs searches were all held valid in the cases cited. Out of the 16 border search cases cited in appellant's brief, only 8 involved searches in an airport customs area. All of those searches were held valid. The only 2 cases cited which held a search invalid were non-airport border searches involving a strip or body cavity search. Of the 23 cases cited by the Government, none reversed airport customs area searches.

My own computer-assisted research has failed to uncover a single case holding invalid a pat-down search of a traveler entering the country through an airport customs area. Indeed, the only case I have found holding invalid any body search of such a traveler is *United States v. Afanador*, 567 F.2d 1325 (5th Cir. 1978). In that case, customs officials had a partially verified confidential tip regarding a specific member of the airplane's crew. Solely on the basis of that tip and even before searching the crew member named in the tip, everyone else in the flight crew was strip searched and narcotics were found under the girdle of one of the stewardesses. Narcotics were also found on the crew member

named by the informant. The Court held the search of the stewardess unlawful, on the ground that a reasonable suspicion must be directed to the individual before a "degrading strip search" may be conducted. 567 F.2d at 1331. It is noteworthy that the search of the crew member named in the informer's tip was found by the Court to be valid.

Believing the way a case is decided on facts should be more important for precedential purposes than language used in a judicial opinion, I conclude the decision of this case is contrary to the law in this Circuit and contrary to the guidance provided by the Supreme Court in this difficult area of law enforcement.

Contrary to the suggestion that the customs agent had only a generalized suspicion in this case, a complete reading of the transcript shows the agent suspected that Sandler was carrying something in his boots. He suspected it was narcotics. He stated his reasons based upon undisputed facts. It is hard to imagine a more particularized suspicion. After the pat-down revealed a soft bulge in the precise area under suspicion, no one can reasonably contend there was not probable cause to have him remove his boots. There was no strip search or body cavity search conducted here.

I agree that the usefulness of *United States v. Mendenhall*, —— U.S. ——, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), in deciding this case is limited as far as voluntariness is concerned. Although the defendant accompanied the officer to the private office and did not resist the pat-down or the boot search, the fact that this was a customs area makes this case different from an ordinary airport case. Anyone who has ever been in a customs area coming into the United States knows that it is best not to plan to leave until the customs authorities have concluded that you are in compliance with the laws for entry into the country. What they tell you to do, you do, as long as it is within their apparent authority. I doubt if the failure to resist going where they tell you to go, or the failure to resist a pat-down search, could be considered voluntary in any significant legal sense.

The facts outlined in the majority opinion, as properly construed upon a reading of the complete transcript, clearly support the finding of the district court that the search here was reasonable and within the limits of the Constitution and the customs laws. I would hold that the motion to suppress was properly denied.

## ON REHEARING AND REHEARING EN BANC

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK, and WILLIAMS, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc on briefs without oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.