**UNITED STATES**

**v.**

**Technical Sergeant Bruce L. BAIR, FR 529–88–9390, United States Air Force.**

**ACM 27605.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 Feb. 1989.

Decided 11 Nov. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie, Captain Eric D. Placke and Captain Morris D. Davis.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

On appeal, as he did at trial, the appellant argues that an anonymous, unsubstantiated tip does not provide "reasonable suspicion" to order a "command-directed" urinalysis. Thus, appellant contends the order was not valid and he committed no offense by failing to obey it. We disagree.

Air Force directives give a commander the authority to order a "command-directed" examination of a member's urine where he has a "reasonable suspicion" of that individual's drug involvement. Air Force Regulation 30-2, *Social Actions Program*, para. 5–8 (18 April 1988) [hereinafter AFR 30-2]. We have earlier held that a "reasonable suspicion" is not a difficult standard for a commander to satisfy. *United States v. Browning*, 29 M.J. 628 (A.F.C.M.R.1988). When it decided to require service members to submit to a urinalysis not supported by probable cause or justified as an inspection under Mil.R.Evid. 313, the Air Force made a policy decision that the results of such "command-directed" tests will not carry criminal sanctions and cannot be used to characterize discharges. AFR 30-2, para. 5–8b.

The facts before us are simple. On 21 July 1988, the Security Police at Davis–Monthan Air Force Base received an anonymous phone call stating that the appellant and a Senior Airman Gary Parker had recently used marijuana. This information was relayed to the appellant's commander who was "shocked" by the accusation and "found it very difficult to believe." Until this point he had no reason to think that the appellant was involved with drugs. The commander, nevertheless, ordered a "command-directed" urinalysis based on the phone call both to "exonerate" the appellant and to eliminate the possibility of drug abusers working on aircraft.

Upon being ordered to provide a "command-directed" urine specimen, the appellant approached a subordinate and asked him for a "clean" urine sample. The airman was "nervous" about the request because the appellant was a technical sergeant, and he reported the matter to the authorities. The appellant did not provide a urine sample as ordered, but instead substituted grapefruit juice.

The trial judge denied the appellant's motion to dismiss because the commander lacked "reasonable suspicion" to order a urinalysis. The appellant then entered a conditional guilty plea to willfully disobeying a lawful order to provide a urine specimen and soliciting another to violate the order. *See* R.C.M. 910(a)(2).

For the last three decades, drug usage and drug trafficking in the Armed Forces have posed a substantial threat to its readiness and efficiency. In the civilian sector, drug abuse has cost billions of dollars in health cost, lost industrial production and has wasted thousands of lives. Both segments of the population, civilian and military, have sought ways to identify drug abuse.

The military community has elected to use a urinalysis program as one means to reduce drug abuse among its members. The test results can be used in a criminal proceeding if they are admissible under the Military Rules of Evidence. In situations where a commander lacks probable cause, he may still order a service member to provide a urine sample if he has a "reasonable suspicion" that the individual is involved with drugs. Because the reasonable suspicion search is "warrantless,"

the individual whose urine tests positive for drugs in such a search is not subject to criminal sanctions although he may be administratively separated. As we have mentioned, however, his drug usage cannot be used to characterize his discharge.

Warrantless, suspiciousless drug testing programs for public employees have been upheld by the Supreme Court against Fourth Amendment challenges. *See Skinner v. Railway Labor Executives Association,* 489 U.S. 639, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) and *Treasury Employees v. Von Raab,* 489 U.S. 685, 109 S.Ct. 214, 102 L.Ed.2d 206 (1989). In each of the above situations, the Supreme Court concluded that the government's "compelling interest" in public safety outweighed private interests and made the searches reasonable.

■ It is recognized that the "expectation of privacy" is different in the military than it is in civilian life. *Committee for GI Rights v. Callaway,* 518 F.2d 466 (D.C.Cir. 1975). Further, the military community is unique in so many ways that it must respond to needs and goals not present in the civilian sector. *See Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983). Accordingly, if the order to an individual to provide a urine sample had a valid military purpose and met the conditions set forth in the underlying directive, it is enforceable. *United States v. Russo,* 50 C.M.R. 650 (C.M.A. 1975); *Chilcott v. Orr,* 747 F.2d 29 (1st Cir.1984). Additionally, using the authority of a military order to obtain a urine specimen is a reasonable procedure in the military community. *Murray v. Haldeman, supra.*

■ An order designed to halt drug abuse among military members has a valid military interest and is disobeyed at the peril of the recipient. *See generally United States v. Dumford,* 28 M.J. 836 (A.F.C. M.R.1989). Here, the question is whether the appellant's commander had a "reasonable suspicion" to issue such an order.

■ In the context of criminal proceedings, the federal courts have held that a "reasonable suspicion must be more than a mere hunch," *United States v. Pearson,* 791 F.2d 867, 870 (11th Cir.1986), and be "more than a generalized suspicion of criminal activity." *United States v. Sandler,* 625 F.2d 537, 539 (5th Cir.1980). As we have stated earlier in this opinion, "reasonable suspicion" is not a difficult standard to meet. Here, the information relayed to the appellant's commander was more "than a generalized suspicion of criminal activity" or "hunch." What the commander was told was not a blanket assertion that everybody in his organization used drugs. The information possessed some internal indicia of reliability in that it named specific individuals, the drug involved, and a general time frame the drug was used. The commander's decision to order a "command-directed" urinalysis was based on more than a "hunch" or a "generalized suspicion."

We are not suggesting that an anonymous tip will always provide a reasonable suspicion" to justify a "command-directed" urinalysis. The facts here, however, amount to more than a "mere hunch," and the appellant's commander was justified in taking the action he did. Of course, command-directed urinalyses do not ordinarily support punitive action. In this case, we have held that the appellant was properly ordered to take a urinalysis based on reasonable suspicion. At that point he was subject only to administrative sanctions because the test was based on reasonable suspicion. What made his conduct a proper subject of a court-martial was his refusal to obey the order to provide the urine sample. He was not court-martialled, nor could he have been, for the positive results of the urinalysis.

One final concern. What is a commander to do when he or she is given information of individual's possible drug involvement? Should the individual be allowed to continue unchecked in a job that might endanger his life and those around him? In our view there is a compelling public interest in safeguarding the unit's mission that outweighs an individual's privacy interests. This is particularly so as here, where the intrusion is minor and carries no criminal sanctions. The commander would have been remiss if he had ignored the

information and done nothing. *See generally United States v. Muniz*, 23 M.J. 201 (C.M.A.1987).

■ Finally, appellate defense counsel suggest that the appellant's "good military character, outstanding leadership and duty performance" make a sentence that includes a bad conduct discharge, confinement for nine months, and reduction to airman basic inappropriate. We do not agree. Willfully disobeying an order strikes at the heart of military discipline and soliciting a subordinate to provide assistance only compounds the misconduct. Further, an examination of the record discloses that the appellant previously received non-judicial punishment for wrongfully using marijuana and a conviction by special court-martial for larceny and wrongfully possessing marijuana. We may, of course, consider the appellant's entire military record when determining sentence appropriateness. *United States v. Cavallaro*, 3 U.S.C.M.A. 653, 14 C.M.R. 71 (1954); *see also United States v. Shumacher*, 11 M.J. 612 (A.C.M.R.1981). The sentence is entirely appropriate. *See United States v. Holt*, 28 M.J. 835 (A.F.C.M.R. 1989). For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

Judges SPILLMAN and PRATT concur.