**M. DODD, Plaintiff,**

**v.**

**John DOE, et al., Defendants.**

**No. 99–CV–71824.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 14, 2000.

---

Richard A. Soble, Ann Arbor, MI, for plaintiff.

Robert Morris, Jr., Detroit, MI, for defendant.

## ORDER

JULIAN ABELE COOK, Jr., District Judge.

On March 7, 2000, the Defendants, Jennifer Barczewski and Bonita Lett, filed a motion in which they ask the Court to enter a summary judgment in their favor. In particular, they assert that they are shielded from the claims by the Plaintiff, M. Dodd (to wit, that they acted in violation of Dodd's rights under the Fourth Amendment) by the doctrine of qualified immunity. Dodd opposes the Defendants' requested relief. For the reasons that have been set forth below, the Court will grant in part and deny in part the instant motion.

## I

Federal Rule of Civil Procedure 56, which governs summary judgment motions, provides, in part, that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed.R.Civ.P. 56(c); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir.1987). Rather, it is the duty of the Court to determine "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

When a summary judgment motion is predicated on a factual issue and is adequately supported, the non-moving party must take some affirmative action to avoid the entry of a summary judgment. Fed. R.Civ.P. 56(e). The mere existence of a scintilla of supporting evidence is insufficient. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). Additionally, a party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" mandates the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II[1]

On August 4, 1997, Dodd returned to the United States from a business trip in Malaysia. It is Dodd's position that, upon her arrival at the Detroit Metropolitan Airport, she was subjected to an unconstitutional search and seizure by the Defendants, all of whom are employees of the United States Customs Service ("Customs"). Dodd maintains, among other things, that she was subjected to strip and body cavity searches. The Defendants deny these allegations.

■ Border searches by Customs officials, such as the one in the instant litigation, are "a longstanding, historically recognized exception to the Fourth Amendment's general principle that a warrant must be obtained." *United States v. Ramsey,* 431 U.S. 606, 621, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). In fact, Customs officials have specific statutory authorization to detain travelers for the purposes of a Customs inspection. 19 U.S.C. §§ 482, 1582; 19 C.F.R. § 162.7. Thus, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant ...." *United States v. Montoya de Hernandez,* 473 U.S. 531, 538, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). However, non-routine searches, such as strip searches and body cavity examinations, require a showing of a reasonable suspicion. *Spear v. Sowders,* 71 F.3d 626, 630 (6th Cir.1995). Reasonable suspicion constitutes "specific objective facts upon which a prudent official, in light of his experience, would conclude that illicit activity might be in progress." *Id.* at 631.

■ In the present motion, the Defendants assert that they are shielded from liability under the doctrine of qualified immunity. This doctrine provides that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzger-*

---

1. On August 14, 2000, the Court entered an order which contains a more detailed statement of the facts.

*ald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is clearly established when it is recognized in pre-existing case law, either in controlling precedent or "relevant caselaw ... to determine whether at the time of the alleged acts a sufficient consensus had been reached indicating that the official's conduct was unlawful." *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir.1989).

■ The initial search of Dodd involved an inquisition at the primary inspection podium, a detention at the luggage table, the search of her luggage, a pat-down prior to her entry to the search room, and a detention in the search room to the extent that it involved only questioning. This search is clearly part of a routine search at an international border, and thus is within the bounds of the Fourth Amendment.

Dodd, while concurring that this search does not require proof of a reasonable suspicion by the Defendants, (Resp. to Defs.' Mot. Summ. J. at 15), insists that these initial actions cannot be so easily compartmentalized. She insists that each of the initial actions by the Defendants was a part of the progression of increasingly invasive searches by them, and the burden on the government to justify each successive violation of her privacy increases as the search intensified. However, she has not presented the Court with any persuasive authority to support her contention.[2] Thus, the Court finds that the Defendants are entitled to qualified immunity for the initial search.

■ The remainder of Dodd's challenged search pertained to the alleged strip search and body cavity examination. This challenged search is considered to be a non-routine examination and, thus, it requires a showing of reasonable suspicion. The Defendants assert that they have sat-

isfied this showing because Dodd had bloodshot eyes, trembling hands, and traveled from a source city (to wit, Amsterdam). (Defs.' Mot. Summ. J. Ex. 8.) Moreover, they contend that Dodd fidgeted and was nervous. (*Id.*)

The Defendants cite to numerous cases which, in their belief, present analogous circumstances and demonstrate that the factors in the instant case were sufficient for a strip search and/or body examination: namely, (1) *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (traveler arrived from source city, gave implausible story about purpose of her visit, had no hotel reservations, and could not recall how her ticket was purchased); (2) *United States v. Shepard,* 930 F.Supp. 1189 (S.D.Ohio 1996) (traveler had taken short trip to source country, was unemployed, appeared very nervous, paid for her ticket in cash on day of travel, lied about her traveling companion, wore loose fitting and bulky clothing, showed physical signs of nervousness, and did not appear to calm down even after extensive questioning by Customs agents); *United States v. Smith,* 557 F.2d 1206 (5th Cir.1977) (traveler arrived from source country, was unemployed, appeared very nervous and pale, carried only suitcase, and alone after alleged vacation); *United States v. Himmelwright,* 551 F.2d 991 (5th Cir.1977) (traveler arrived from short stay at source country, wore platform shoes, gave evasive and contradictory answers when questioned about her employment, and was traveling alone); and *United States v. Ogberaha,* 771 F.2d 655 (2d Cir. 1985) (traveler arrived from source country, was expected to stay in New York for only a week, carried luggage that Customs officials judged to be small for international travel, purchased her ticket with cash shortly before departure, reacted strange-

---

**2.** While Dodd generally cites to *Spear* to support her argument, the Court finds that the *Spear* court does not hold that the burden on the government increases with each successive routine search. Instead, the *Spear* court held, *inter alia,* that (1) a visitor to a peniten- tiary can be subjected to some searches, such as a pat-down or a metal detector sweep, without any suspicion and (2) a strip and body cavity search requires reasonable suspicion. *Spear,* 71 F.3d at 630.

ly to routine questions, was nervous and disoriented, and wore loose fitting clothing).

The Defendants correctly acknowledge that these cases do not mirror the exact factors in the present case. (Defs.' Mot. Summ. J. at 12.) In the instant litigation, Dodd did not purchase her ticket immediately prior to her flight, did not pay in cash for her ticket, had plenty of luggage (to wit, two suitcases and a video camera), stayed in Malaysia for three weeks, and was traveling on business with three co-workers for a major company. Moreover, she offered the Defendants several options in an effort to verify her answers to Barczewski's questions, including contacting her three traveling companions, her employer, and her doctor (to explain the trembling hands). (Dodd Dep. at 101.) According to Dodd, the Defendants refused to exercise any of these options. (*Id.*)

When viewing the evidence in a light that is most favorable to Dodd, the Court finds that reasonable suspicion cannot be established. The Defendants could have easily verified Dodd's information before initiating the alleged invasive search. Moreover, the Court finds, if Dodd's version of the events in question is accepted, that the Defendants are not entitled to qualified immunity with respect to the non-routine search.[3] While there is no reported case which contains the exact factors as presented in this litigation, the Court finds that other courts have found the lack of reasonable suspicion in cases where travelers had more questionable factors than those presented in the instant action. *See Adedeji v. United States,* 782 F.Supp. 688 (D.Mass.1992); *Ekpo v. United States,* No. 91C 6418, 1992 WL 117121 (N.D.Ill. May

22, 1992). Hence, under Dodd's scenario, the Court finds that a reasonable person would have known that Dodd's constitutional rights were violated.

### III

Accordingly, for the reasons that have been set forth, the Defendants' Motion for Summary Judgment is granted in part and denied in part. Specifically, the Defendants are entitled to qualified immunity for the routine aspect of the challenged search, but is not entitled to qualified immunity for the non-routine portion.

IT IS SO ORDERED.

---

**3.** The Defendants assert that Lett is entitled to qualified immunity inasmuch as she did not participate in the non-routine search at issue and served merely as a witness. However, according to Dodd, Lett did provide assistance by accepting Dodd's clothing after Barczewski ordered Dodd to take her clothing off. (Dodd Dep. at 101.) Moreover, there is evidence that Lett was aware of the factors

for the search. Specifically, before the non-routine search occurred, Barczewski informed Dodd, in Lett's presence, that the factors justifying the search were Dodd's bloodshot eyes and trembling hands. (Dodd Dep. at 100.) Hence, when viewing the evidence in a light that is most favorable to Dodd, Lett is not entitled to qualified immunity for the non-routine search.