UNITED STATES of America, Plaintiff-Appellant,

v.

Barry Dean MICHAEL, a/k/a Mike Thompson, a/k/a Mike Johnson, Defendant-Appellee.

No. 79–2679.

United States Court of Appeals, Fifth Circuit.

May 11, 1981.

Charles Clark, Circuit Judge, with whom Gee, Tjoflat, James C. Hill, Henderson, and Reavley, Circuit Judges, joined, specially concurred and filed opinion.

Tate, Circuit Judge, with whom Kravitch, Frank M. Johnson, Jr., Politz, Hatchett, Randall, Thomas A. Clark and Jerre S. Williams, Circuit Judges joined, filed a dissenting opinion.

Godbold, Chief Judge, with whom Kravitch, Frank M. Johnson, Jr., Politz, Hatchett, Randall, Tate, Thomas A. Clark, and Jerre S. Williams, Circuit Judges, joined, filed a dissenting opinion.

**254**

William S. Sutton, Asst. U. S. Atty., Atlanta, Ga., Ann T. Wallace, Appellate Sec., Criminal Div., Washington, D. C., for plaintiff-appellant.

Al Horn, Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, and BROWN, AINSWORTH, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAMUEL D. JOHNSON, THOMAS A. CLARK, and JERRE S. WILLIAMS, Circuit Judges.*

* Coleman, Circuit Judge, elected not to participate in the consideration or decision of this appeal.

1. Fed.R.App.P. 35(a); Fifth Circuit Local Rule 16.2.4.

2. It was error for the district judge to follow the panel opinion in *United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975), as precedent. The court's vote to put *Holmes* en banc vacated the panel opinion. *See* Local Rule 17. A vacated judgment leaves the case as if no decision had been entered. *See, e. g., Lantz v. Vai*, 199 Cal. 190, 193, 248 P. 665, 665 (1926); *Clarke v. Baird*, 98 Cal. 642, 644, 33 P. 756, 756–57 (1893); *In re Edwards*, 25 Cal.App.3d 906, 912, 102 Cal.Rptr. 216, 220 (2d Dist. 1972); *Adel-*

AINSWORTH, Circuit Judge:

This criminal prosecution requires us to determine the appropriate standard for the warrantless installation of an electronic tracking device (a "beeper") on the exterior of a vehicle parked in a public place. The question remains one of first impression for this circuit because of our equally divided vote when considering the same issue in *United States v. Holmes*, 537 F.2d 227 (5th Cir. 1976) (*en banc*); *see id.* at 228 (Ainsworth, J., dissenting). As in *Holmes*, this case was placed *en banc* because of its exceptional importance.[1]

Defendant-appellee Barry Dean Michael was indicted on two counts: unlawfully manufacturing and possessing with the intent to distribute a Section II Controlled Substance, methylenedioxyamphetamine (MDA), and conspiring to distribute MDA in violation of 21 U.S.C. §§ 841(a)(1) and 846. Michael moved to suppress certain evidence as unconstitutionally seized. The district court, relying on the panel opinion in *Holmes*,[2] granted Michael's motion to suppress with respect to evidence seized from a warehouse pursuant to a warrant, but which DEA agents had discovered through the warrantless installation of a beeper on the exterior of a van which Michael had rented. R. at 118–120. A panel of this court, relying both on its independent analysis and on the *Holmes* panel opinion,[3] affirmed the district court. *United States v. Michael*, 622 F.2d 744 (5th Cir. 1980). The court voted to rehear this case *en banc*, *United States v. Michael*, 628 F.2d 931 (5th

*helm v. Dougherty*, 129 Fla. 680, 683, 176 So. 775, 777 (1937); *Talley v. Alton Box Board Co.*, 37 Ill.App.2d 137, 138, 185 N.E.2d 349, 350 (4th Dist. 1962); *Luck v. Hopkins*, 92 Tex. 426, 428, 49 S.W. 360, 361 (1899); *Sawyer v. Donley County Hosp. Dist.*, 513 S.W.2d 106, 109 (Tex. Civ.App.—Amarillo 1974, no writ); 49 C.J.S. *Judgments* § 306 (1947). *United States v. Conroy*, 589 F.2d 1258, 1263 (5th Cir. 1979), is not to the contrary.

3. The panel in *Michael* independently adopted the reasoning of the *Holmes* panel and did not view *Holmes* as precedent. *See United States v. Michael*, 622 F.2d 744, 744 n.1 (5th Cir. 1980).

Cir. 1980), thus vacating the panel opinion. *See* Fifth Circuit Local Rule 17. We reverse the judgment of the district court.

## I. THE FACTS

In early 1978, an employee of Scientific Products, a chemical supply house in Atlanta, Georgia, notified Drug Enforcement Administration (DEA) agents that Andrew Welch was purchasing large quantities of glassware and equipment of the type used in clandestine drug laboratory operations. Upon further investigation, a team of agents led by Agent James Sweat learned that Welch was also purchasing chemicals from Burris Chemical Company in Atlanta. In particular, they discovered that Welch had purchased a barrel of acetone and a barrel of formic acid in December 1977. Both acetone and formic acid can be used to manufacture MDA.

On August 8, 1978, an employee of Burris Chemical Company notified the DEA that a "Mike Thompson" had purchased a large quantity of acetone, 20 gallons, that day and had made several previous purchases. About the same time, Agent Sweat learned that "Mike Thompson" had returned the empty acetone drum from Welch's December 1977 purchase and had directed the deposit be sent to Welch. Also early in August, Burris employees told Agent Sweat that on July 20 Welch had purchased some muriatic acid, another chemical used in the manufacture of MDA.[4] At this time, Agent Sweat told the Burris employee to let Sweat know if "Mike Thompson" ever ordered any more chemicals.

At lunch time on August 10, the Burris employee contacted Agent Sweat to tell him "Mike Thompson" had ordered another drum of acetone and that "Thompson" usually picked up his order within the hour. Agent Sweat and his partner arrived at Burris before "Thompson" and saw "Thompson" load the acetone into a van.[5] The agents followed the van by visual surveillance until "Thompson" parked in a lot adjoining a pizza restaurant and went inside. While "Thompson" was inside the restaurant, Agent Sweat's partner, Agent Smith, installed a beeper on the exterior of the van without first obtaining a warrant.

Further investigation by the DEA established that "Mike Thompson" was an alias used by appellee Barry Dean Michael. Subsequent monitoring of the beeper placed on Michael's van ultimately led the DEA agents to a warehouse where, pursuant to a warrant, they seized the chemicals, equipment, and quantities of MDA which are the subject of Michael's suppression motion.

## II. THE LAW

■ We look to the fourth amendment to determine whether the facts in this case, as related above, provide a sufficient basis for the warrantless installation of a beeper on Michael's van. The fourth amendment, in pertinent part, protects people's "persons, houses, papers, and effects, against unreasonable searches and seizures." Although originally viewed as protecting property rights of individuals, the Supreme Court has now rejected the idea that fourth amendment coverage turns on "arcane distinctions developed in property ... law." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). Instead, the fourth amendment protects individuals

---

**4.** In late July, the DEA agents also learned that Janice Christie had been arrested by the Georgia Bureau of Investigation for possession of one pound of MDA (R. vol. II at 23–24). The vehicle Christie was driving was registered to Andrew Welch. Inside the vehicle, GBI agents found a receipt for 500 pounds of iso-safrole, another chemical used to make MDA, made out to "Mike Johnson." Later investigation revealed that "Johnson" was an alias of appellee Michael.

Although Agent Sweat stated that on August 10 he had not connected Michael with the purchase of iso-safrole (R. vol. II at 76), the GBI arrest of Christie, of which the DEA agents were aware, supports the agents' belief that Welch and his associates were engaged in the manufacture of MDA.

**5.** After observing a man believed to be "Mike Thompson" pick up some chemicals at Burris, Agent Sweat's partner, Agent Smith, radioed the DEA office and had the operator call Burris Chemical Company to make sure the individual was "Mike Thompson." R. vol. II at 127–28.

from violations of their legitimate or reasonable expectations of privacy. *See id.; Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Jones v. United States*, 357 U.S. 493, 498, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514 (1958). Expectation of privacy analysis is especially appropriate in cases like the instant one which involve an individual's rights with respect to an automobile.[6] In *Cardwell v. Lewis*, 417 U.S. 583, 591, 94 S.Ct. 2464, 2470, 41 L.Ed.2d 325 (1974) (plurality opinion), Justice Blackmun stated, "[I]nsofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry."

In addition, fourth amendment cases have recognized that the degree of intrusion into a suspect's privacy is relevant in deciding whether any of the suspect's constitutional rights have been infringed. Thus, "intrusions into the human body," because of their extremely invasive nature, require more justification to satisfy the fourth amendment,[7] than does a limited stop and frisk.[8] Likewise, the ransacking of a suspect's house in search of evidence requires more justification for the intrusion[9] than does the examination of a suspect's automobile to discover its vehicle identification number.[10] Applying this dual privacy and intrusiveness analysis to the facts of the instant case, we hold that the minimal intrusion involved in the attachment of a beeper to Michael's van, parked in a public place, was sufficiently justified so as to satisfy any of Michael's fourth amendment expectation of privacy concerns.

## III. APPLICATION

We note that some members of the majority would hold that the installation of the beeper on the van is not a search or seizure at all, and thus does not implicate any fourth amendment interests. While we do not reject this view, we feel that under the facts presented, the installation of the beeper was permissible even if we assume the installation was a search.[11]

---

6. The circuits that have considered the permissibility of installing beepers have used a privacy analysis. *See, e. g., United States v. Bailey*, 628 F.2d 938, 940 (6th Cir. 1980) (petition for rehearing pending); *United States v. Bernard*, 625 F.2d 854, 860 (9th Cir. 1980); *United States v. Bruneau*, 594 F.2d 1190, 1196 (8th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979); *United States v. Washington*, 586 F.2d 1147, 1157 (7th Cir. 1978); *United States v. Clayborne*, 584 F.2d 346, 348 (10th Cir. 1978); *United States v. Moore*, 562 F.2d 106, 110 (1st Cir. 1977).

7. *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966) (warrant supported by probable cause).

8. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *id.* at 33, 88 S.Ct. at 1886 (Harlan, J., concurring) (reasonable "articulable suspicion"). *See Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). This circuit has recognized that whether something less than probable cause may justify a search depends in part on the intrusiveness of that search. In *United States v. Afanador*, 567 F.2d 1325, 1328 (5th Cir. 1978), we said, "Thus, what constitutes 'reasonable suspicion' to justify a particular search may not suffice to justify a more intrusive or demeaning search." *See also United States v. Smith*, 557 F.2d 1206, 1209 n.6 (5th Cir. 1977),

cert. denied, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978); *United States v. Himmelwright*, 551 F.2d 991, 994 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

9. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980) (warrant supported by probable cause). *See Lewis v. United States*, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966).

10. *United States v. Johnson*, 431 F.2d 441 (5th Cir. 1970) (*en banc*) (no warrant or probable cause necessary). *See South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976); *United States v. Martinez-Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084–85, 49 L.Ed.2d 1116 (1976).

11. It is difficult to classify the actions taken by the DEA agents in this case as either a search or seizure. *See United States v. Bailey*, 628 F.2d 938, 940 (6th Cir. 1980). The panel opinion relied on "pre-*Katz* jurisprudence" to find that the attachment of the beeper without the consent of someone with a possessory interest in the van was a search. *United States v. Michael*, 622 F.2d 744, 749 (5th Cir. 1980). However, as we have pointed out, analysis of search and seizure cases in terms of property law has now been replaced by reasonable ex-

The facts known to the DEA agents at the time they placed the beeper were enough to give them a reasonable suspicion that Michael was engaged in criminal activity. That is to say, specific and articulable facts, together with rational inferences from those facts, reasonably warranted the agents in the belief [12] that Michael was involved in the illicit manufacture of MDA. The agents had been told that Michael and Welch were associated. The agents had probable cause to believe Welch was manufacturing MDA, *United States v. Michael*, 622 F.2d 744, 745 n.4 (5th Cir. 1980), and the agents knew Michael had purchased chemicals consistent with the manufacture of MDA on several occasions. We are supported in our view that the facts establish reasonable suspicion in light of the panel's similar conclusion. *Id.* However, the district court found, "The evidence that was seized from the warehouse was the product of an unlawful search and therefore subject to exclusion," (R. at 118) since the DEA agents obtained no warrant to install the beeper which led them to the evidence. Likewise, the panel would have allowed warrantless use of the beeper only if both probable cause and exigent circumstances existed. *United States v. Michael, supra* at 752. We disagree with the district court and the panel and hold that reasonable suspicion is adequate to support warrantless beeper installation.[13]

## A. Privacy

First, as we have said, Michael's fourth amendment rights in this case turn upon his reasonable expectations of privacy. However, search and seizure cases involving vehicles have recognized that an individual's expectation of privacy in his automobile is less than in other property. The Supreme Court has stated:

> But this Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts.
>
> . . . .
>
> The answer lies in the diminished expectation of privacy which surrounds the automobile. . . .

*United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977); *see also United States v. Foskey*, 636 F.2d 517 (D.C. Cir. 1980). In this case, Michael's van was parked in plain view, in a public place. Michael drove the van on public roads during the daytime. The Supreme Court said in *Cardwell*:

> A car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view. [citation omitted] "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment pro-

---

pectation of privacy analysis. *See note 5, supra,* and accompanying text.

**12.** *See Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *United States v. Cimino*, 631 F.2d 57, 59 (5th Cir. 1980).

**13.** The other circuits have reached widely varying results for determining the proper standard for the warrantless use of a beeper. The Ninth Circuit analyzes the installation and the monitoring of the beeper separately. Some Ninth Circuit cases have held that neither installation nor monitoring infringes a privacy interest, *United States v. Pretzinger*, 542 F.2d 517, 520 (9th Cir. 1976); *United States v. Hufford*, 539 F.2d 32, 34 (9th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976). Another has held that installation might "violate

fourth amendment precepts," *United States v. Miroyan*, 577 F.2d 489, 492 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978).

The Sixth Circuit appears to require nothing less than a warrant, at least for the attachment and monitoring of beepers on goods. *United States v. Bailey*, 628 F.2d 938 (6th Cir. 1980). *But see id.* at 942, 947 (may be no expectation of privacy as to public travels of a vehicle). The First Circuit ostensibly requires probable cause, although the court left open the possibility of a "reasonable cause" standard. *United States v. Moore*, 562 F.2d 106, 113 n.3 (1st Cir. 1977), *citing United States v. Holmes*, 537 F.2d 227, 228 (5th Cir. 1976) (*en banc*) (Ainsworth, J., dissenting). The holdings of the other circuits are discussed in *United States v. Michael*, 622 F.2d 744, 747–48 (5th Cir. 1980).

tection." *Katz v. United States,* 389 U.S., at 351, 88 S.Ct., at 511; *United States v. Dionisio,* 410 U.S. [1] at 14, 93 S.Ct. [764] at 771 [35 L.Ed.2d 67].

417 U.S. at 590–91, 94 S.Ct. at 2469–70. As the cases demonstrate, Michael's legitimate expectation of privacy with respect to the movements of his automobile was substantially reduced.[14]

## B. Intrusiveness

Second, the intrusion occasioned by the placement of the beeper was not great. Although the attachment was technically a trespass, "arcane distinctions developed in property . . . law" are not controlling. The Supreme Court has permitted the removal of paint scrapings from the exterior of an automobile, observing "[W]e fail to comprehend what expectation of privacy was infringed. Stated simply, the invasion of privacy, 'if it can be said to exist, is abstract and theoretical.' *Air Pollution Variance Board v. Western Alfalfa Corp.,* 416 U.S. 861, 865, 94 S.Ct. 2114, 2116, 40 L.Ed.2d 607 (1974)." *Cardwell v. Lewis,* 417 U.S. at 591–92, 94 S.Ct. at 2470 (1974). Similarly, this court, sitting *en banc,* has allowed police officers without warrants to open vehi-

cle doors to determine the correct identification numbers on the side panel. *United States v. Johnson,* 431 F.2d 441 (5th Cir. 1970) (*en banc*).

█ We find that the DEA agents' reasonable suspicion that Michael was engaged in criminal activity justified the placement and monitoring of the beeper. The actual installation of the beeper was much less intrusive than the typical stop and frisk. Michael was in the pizza restaurant when the installation took place. He was not detained or questioned; he suffered no indignity;[15] nothing from the interior of the van was seized or searched; indeed, nothing even from the van's exterior was removed. *See Cardwell v. Lewis,* 417 U.S. at 591, 94 S.Ct. at 2470. The subsequent monitoring also did not violate Michael's reasonable expectation of privacy. The beeper only aided the agents in the performance of their lawful surveillance.[16] The van traveled public roads and was exposed to public view. Monitoring the beeper while the agents had reasonable suspicion to believe Michael was conspiring to manufacture MDA did not violate his fourth amendment rights.

---

**14.** The Government argues with considerable cogency that this case is governed by *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). In that case the Supreme Court held that installation and use of a pen register at the telephone company's central office to record the numbers dialed by the defendant was not a search and violated no expectation of privacy. *Id.* at 743, 99 S.Ct. at 2581. The Court reasoned that since telephone users convey numerical information to the phone company which can be permanently recorded, they have no reasonable expectation that the phone company would not disclose those numbers to the police. *Id.* at 744, 99 S.Ct. at 2581–82.

The reasoning in the instant case is even more straightforward; no two-step disclosure is required. In driving on public roads, Michael was disclosing his van's whereabouts directly to all law enforcement officials who cared to observe. The beeper, like the pen register in *Smith,* facilitated such observation. That the beeper required the DEA agents to make a technical trespass unlike the pen register in *Smith* is not controlling. This slight physical intrusion is insignificant if it infringes no *privacy* interest. Thus, although we do not neces-

sarily adopt the reasoning in *Smith* so completely as to find that the attachment and use of the beeper was free from fourth amendment concerns, we recognize that under *Smith,* Michael's expectation of privacy in this case was slight.

**15.** *See Terry v. Ohio, supra,* 392 U.S. at 17–18, 88 S.Ct. at 1877.

**16.** At oral argument, Michael's counsel called our attention to the recent Second Circuit case of *United States v. Taborda,* 635 F.2d 131 (2d Cir. 1980). *Taborda* held that binocular-enhanced viewing of the interior of a home may violate a defendant's reasonable expectation of privacy. Although there exists some authority for the opposite view, *United States v. Hufford,* 539 F.2d 32, 34 (9th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976); *United States v. Grimes,* 426 F.2d 706, 708 (5th Cir. 1970), our holding today does not contradict *Taborda.* The police in *Taborda* were viewing into a private home, not observing the open movements of a motor vehicle on the public highways. *See United States v. Allen,* 633 F.2d 1282 (9th Cir. 1980).

## C. Competing Interests

■ Third, we consider the governmental interest in eliminating illegal drug manufacture to be a persuasive reason to permit this minimally intrusive practice.[17] An "intermediate response" based on something less than probable cause,[18] is a proper investigatory tool to aid DEA agents in discovering and eliminating clandestine laboratory operations. In balancing the public concerns served by the use of the beeper, to discover Michael's drug manufacturing apparatus against the slight infringement of Michael's expectation of privacy, we find the beeper's use to be eminently reasonable. We hold that the installation and monitoring of the beeper involved no violation of Michael's fourth amendment rights. Accordingly, we reverse the district court's suppression of the evidence seized at the warehouse.

REVERSED.

JOHN R. BROWN, Circuit Judge, concurring:

Although I would hold categorically this was not a search or seizure I concur fully in Judge Ainsworth's opinion and all but the last sentence of the first paragraph of Judge Charles Clark's opinion.

CHARLES CLARK, Circuit Judge, with whom GEE, TJOFLAT, HILL,* HENDERSON* and REAVLEY,* Circuit Judges, join, specially concurring:

I concur in Judge Ainsworth's reversal of the district court's exclusion of evidence. I also concur in his holding that no invasion of constitutionally protected privacy occurred when police with the degree of reasonable suspicion present here attached an electronic tracking device to Michael/Thompson/Johnson's van. This concurrence is special because, in my view, Judge Ainsworth's analysis is improperly cast in fourth amendment terms.

The beeper is no more than another device to aid police. Satellite cameras, computers, microscopes, and mass spectrometers are highly sophisticated but accepted tools police can now use to detect crime. Officers routinely use radios, radar, helicopters, quick-access files of license tags and fingerprints, and interdistrict crime information exchanges in the performance of their duties. Binoculars, night vision equipment, even sunglasses and ordinary eyeglasses may serve to enhance a patrolman's ability to observe a suspect. Yet most of these devices and systems intrude into areas of citizens' lives that were private in the day of the deerstalker and magnifying glass. They are used and permitted to be used because society wants the police function to be efficient. They are needed to keep police protection abreast of criminal cunning and affordable to taxpayers.

Requiring the fourth amendment's warrant procedure to be used or excused every time a policeman's senses or abilities are mechanically or electronically enhanced would diminish their usefulness needlessly. The fourth amendment should be reserved for instances when its explicit protection "against unreasonable searches and seizures" is truly involved. Calling the attachment of a beeper to an automobile a search creates confusion at the outset—it is neither a search nor a seizure. As importantly, extending the illogic of the exclusionary rule (which punishes society for the transgressions of errant police) to non-search situations puts undue pressure on courts to

---

17. The governmental interest in deterring criminal conduct may properly be balanced against an individual's privacy interests in fourth amendment cases. *See, e. g., Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). In *United States v. Himmelwright,* this court stated:

"[R]easonableness" in the fourth amendment sense always depends upon a balance which must be struck between, on the one hand, the level of official intrusion into an individual privacy and, on the other hand, the public interest to be served by such an intrusion. 551 F.2d 991, 994 (5th Cir. 1977).

18. *Adams v. Williams, supra,* 407 U.S. at 145, 92 S.Ct. at 1921, 1923 (1972).

* Hill, Henderson and Reavley, Circuit Judges, also fully concur in the majority opinion.

infringe the core right at issue—the right to privacy. Where no search or seizure is involved, police abridgment of the right to privacy should be rectified as other similar constitutional infringements are—through a private action against the errant officer.

TATE, Circuit Judge, with whom KRAVITCH, FRANK M. JOHNSON, Jr., POLITZ, HATCHETT, RANDALL, THOMAS A. CLARK and JERRE S. WILLIAMS, Circuit Judges, join, dissenting:

Sitting en banc in mini-convention of twenty-four appellate judges, a majority of our court has decided that an individual living under our Constitution has no reasonable expectation of privacy such as would protect him from a trespass upon his property by governmental agents, a trespass that enables them to maintain continuous electronic surveillance over his movements twenty-four hours per day continuously and indefinitely. The same act, if committed by a private person, would subject that person to criminal and civil liability. The majority—contrary to every circuit that has considered the issue—has determined that executive agents of the government may, without legislative or judicial authorization, ignore an individual's proprietary or possessory interest in his own property under circumstances self-determined by the executive agents as affording them reasonable suspicion that their trespass might lead them to information of law violation.

With deference to the majority, this holding that governmental agents may invade or use a private person's property by a trespass in violation of statute is truly subversive of our Constitution's protection of private property rights against intrusion or taking by executive agents except as authorized by valid legislation.[1] It is, of course (in my view), violative of the great principles incorporated in our Bill of Rights that every individual living under our Constitution is protected against arbitrary intrusion by government upon the privacy of his person or the sanctity of his property.

### I.

As I read the majority opinion, it does not question that (as found by the trial court) no exigent circumstances required the immediate installation of the beeper, and it further concedes, albeit somewhat grudgingly, that the unauthorized attachment of the beeper to the exterior of the automobile is a "search" within the meaning of the Fourth Amendment,[2] a concession perhaps

---

1. It has been suggested that, rather than leave the installation of a beeper to untrammelled executive discretion, the sensitive values at issue may best be served by legislation expressly authorizing such an executive trespass under limited conditions, subject to prior judicial assessment of its necessity and subject to judicial supervision of its duration and extent, similar to the legislation enacted with regard to wiretapping. See, e. g., Note, *Tracking Katz: Beepers, Privacy, and the Fourth Amendment*, 86 Yale L.J. (1977). Even absent such legislation, as appeals in this court have indicated, some district courts, regarding the installation of a beeper as a "search", have judicially authorized the installation upon a showing of probable cause. *Id.* In the present record, the matter of securing a warrant from a magistrate was discussed by the law enforcement officers with the United States Attorney's office at a time sufficiently in advance of the actual installation as to have permitted the issuance of a warrant; there are, in my opinion, implications in the record that the warrant was not sought because of the absence of the judicially-required probable cause.

2. The following observations are the writer's personal views and are not necessarily shared by any judge who concurs in this dissent:

Although there is as yet little jurisprudential support for the position, the writer would individually tend to agree with Judge Charles Clark in his special concurrence that we are actually presented with a Ninth Amendment protection of the individual's right to privacy of his person and protection of his property against unauthorized intrusion by the agents of government. See the panel opinion, *United States v. Michael*, 622 F.2d at 148 (n.10). However, unlike the concurrence, the writer believes that the Ninth Amendment protection of an individual's privacy and private property constitutionally requires no less probable cause and magisterial oversight through a warrant than the Fourth Amendment "search"—without the rather tortuous necessity of articulating the Constitution's application in terms of an unreasonable "search", as the Court historically and consistently has done, see panel opinion, 622 F.2d at 746, 749.

In some quarters, it is fashionable at the moment to decry the exclusionary rule and its

arising from the virtually unanimous jurisprudence to such effect [3]—and, indeed, the government does not dispute that placement of the beeper is considered a "search" for Fourth Amendment purposes. The majority then states that because the private property searched was an automobile and because the illegal trespass on its exterior was minimally intrusive, the defendant had such insufficient expectation of privacy that the governmental agents were not only relieved of the requirement to obtain a warrant under judicial supervision before installing the beeper, but also that they could do so merely on reasonable suspicion that the vehicle's possessor was engaged in criminal activity. The fundamental basis for the majority's view is that objective private property rights are more or less irrelevant in determining whether governmental agents may search his property—the principal criteria by which this trespass is tested is, instead, whether the judges reviewing the action determine (based in the ultimate on the judge's subjective views) that the victim whose property was searched had himself both a subjective and an objective expectation of privacy.

The Constitution itself, and particularly the Bill of Rights, was adopted at a time when fresh in men's minds was the experience of governmental theory that an individual's right to his property could be subordinated to the executive's need for it (quartering troops, for example). It repeatedly recognizes the sanctity of private property against unauthorized governmental use or trespass or taking. The Supreme Court of the United States, the interpreter of that constitution, has never, in the utilization of the "reasonable expectation of privacy" test,[4] deviated from recognition of the fundamental Fourth Amendment protection of a proprietary or possessory interest in private property, be it a building or a vehicle, as will be shown. Nor do its opinions warrant disregard of the objective line where property rights begin, as marking the minimum area beyond which government cannot intrude without authorization or exigent circumstances, and the substitution instead of a standard to be evolved according to the notions of judges of a given time and place of the privacy to be accorded the possessor of private property.

In Part IV below I shall attempt to demonstrate that the authorities relied upon by the majority should not be construed to support its propositions: *A.* that a governmental trespass is of no moment, even though the defendant has a proprietary or possessory interest in the property searched,

---

alleged illogic in letting the criminal go free because the constable blundered. However, the exclusionary rule is the law of the land as enunciated by that Court by which our Constitution is ultimately enforced. Further, I would venture to say that against all the defects arising from its application, its imposition by the Court has greatly improved compliance by executive agents with the mandates of the Constitution. *Mapp*'s enunciation of the exclusionary penalty for violation of the constitution recognized that private action by a victim of an unconstitutional search provided no practical remedy at all. Before *Mapp*, there was no effective sanction to enforce compliance with the constitutional mandate of the Fourth Amendment, applicable by virtue of the Fourteenth to state officers as well as federal. Without the exclusionary rule, the courts become complicitors in unconstitutional actions of law enforcement officers that result in convictions, although perhaps tut-tutting like Pontius Pilate. For reasons such as these, a Ninth Amendment violation should likewise implicate an exclusionary rule.

3. See original panel opinion, *United States v. Michael*, 622 F.2d 744 (5th Cir. 1980) at 746, 749.

4. The "reasonable expectation of privacy" test was adopted by the United States Supreme Court in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1969), which involved electronic eavesdropping, to *broaden* the constitutional protection of individual liberty against governmental electronic search, which theretofore had depended upon whether a trespass had occurred. See panel opinion, 622 F.2d at 748–51. The majority incorrectly relies upon the *Katz* test to *limit* the constitutional protection accorded a victim of a trespass, in presumed reliance upon *Rakas* and its progeny—inapplicable decisions that involved the nonexpectation of privacy in a person *without* any proprietary or possessory interest in the property searched, see Part IV *A* of this opinion, *infra.*

because a reasonable expectation of privacy is the sole measure by which to test whether the government's intrusion on private property is unreasonable; *B.* that an individual has no expectation of privacy in the exterior of his automobile, even insofar as a continuous trespass providing indefinite surveillance; *C.* that, because of the government's interest in law enforcement, reasonable suspicion alone—without a warrant or exigent circumstances—suffices to justify such a governmental invasion of private property. Before doing so, in Part II I shall point out the nature of the invasion and some of the implications of the majority's rationale that justifies the present warrantless invasion on reasonable suspicion alone, and in Part III I will briefly summarize how radically different is the majority's approach from that of every other circuit that has approached the issue before us.

## II.

Without judicial authorization limiting its duration, the attachment of a beeper to an automobile permits electronic tracking of its movements twenty-four hours per day indefinitely. The automobile is tracked wherever it goes, whether within the confines of a private estate or on the public streets, whether visually observable from a public place or not. The trespass may be momentary in initial placement, but its consequences are continuous and indefinite. As the panel opinion stated, this intrusion by trespass is "generically different in degree and kind" from the type of warrantless intrusion heretofore justified, such as opening a car door to see an identification number, *United States v. Johnson,* 431 F.2d 441 (5th Cir. 1970) (en banc), or scraping paint from an automobile already previously impounded lawfully (i. e., seized in its entirety) by reason of probable cause and exigent circumstances, *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1970).

The majority relies upon *Cardwell,* which concerned a generically different type of trespass, to hold that the possessor had no reasonable expectation of privacy as to the *exterior* of his automobile. In doing so, the majority at least inferentially admits that the defendant's reasonable expectation of privacy would have been violated if the beeper had been placed, by a momentary trespass of opening the door, in the *interior,* say under the seat of the vehicle. The Constitution would *then* have been offended by the placement of the beeper in the vehicle's *in*terior, although the consequences of continuous and indefinite surveillance are no more than if the trespass had instead concerned the vehicle's *ex*terior. The Constitution's protection does not depend on a fine line of the type of trespass that is so irrelevant to the individual's freedom from unauthorized governmental invasion; the illogic of an *in*terior-*ex*terior distinction through reliance upon *Cardwell* illustrates the inapplicability of *Cardwell* to determination of the issue before us, which concerns a generically different situation.

However, if faced by the installation of a beeper inside the vehicle, perhaps the majority might well say that, after all, in their view the individual had no reasonable expectation of privacy that was violated, the intrusion being so momentary. The majority's reasoning—once it has made the quantum leap it *has* made by holding *this* governmental trespass justified by reasonable suspicion alone—could well support such a result.

Indeed, the examples given of the degrees of privacy and intrusion that justify less than full Fourth Amendment protection—an intrusion into the human body versus a stop and frisk; the ransacking of a suspect's house versus an examination of an automobile to determine its vehicle identification number—are indicative that the majority may well be willing to remove Fourth Amendment protection against installation of beepers to far more than the exterior of automobiles. The majority's analysis and rationale, it seems to me, could equally support the momentary and unobtrusive attachment of a beeper to the suspect's coat, while it was on a coatrack as he sipped coffee (when, under the present facts, the agents were instead installing the beeper on

his van parked outside the coffeeshop). Again, the analysis and rationale could easily support the unobtrusive implacement of a beeper in a suspect's shirts and suits when at the laundry or cleaner (or even on a clothes line outside his home).

It is possible (but I doubt it) that the majority intends to permit such governmental surveillance activities by its test limiting the government's unauthorized use of private property to maintain continuous electronic surveillance *only* by the degree of intrusiveness and what the deciding judges deem to be the suspect's reasonable expectation of privacy. (These examples, after all, are minimal intrusions, and the government could visually follow him in person as well as his vehicle; and, similarly, the beeper only tells the suspect's location, so therefore what right of privacy does the individual have that is violated?) These illustrations of the type of trespass-based continuous surveillance opened up to government by the majority's rationale illustrate, I hope, not the majority's intentions but, instead, a fundamental defect in its analysis: the assumption that the initial momentary trespass on the exterior of an automobile can somehow be separated from the continuous and indefinite electronic surveillance made possible by it, in determining whether an individual's reasonable expectation of privacy has been invaded by actions of executive agents not legislatively or judicially authorized.

### III.

The majority's opinion concludes that reasonable suspicion entitles governmental agents to install a beeper upon a private automobile, and that irrelevant to lawfulness of the implacement are probable cause, the necessity of a warrant, and exigent circumstances. The majority concludes that executive agents may do so without legislative or judicial authorization, and in doing so its opinion persuasively cites excerpts and principles from prior jurisprudential interpretations that effectively cloak the majority's radical departure from previously accepted Fourth Amendment

principles. I will attempt in Part IV *infra* to demonstrate how each of the majority's postulates are based upon jurisprudential expressions arising in issues fundamentally different from that now before us.

The majority's resolution of the sensitive and complex issue before us totally differs from that of any circuit that has approached it. The original panel opinion in some detail summarizes the views and holdings of other circuits. 622 F.2d 747–48. The en banc majority refers only glancingly to these decisions, ignoring the very real Fourth Amendment concerns expressed by them. The majority likewise ignores the rationales and holdings of these decisions by other circuits, which without exception totally conflict with the rationale used by the majority in its present repeal of Fourth Amendment application to the installation of beepers to private automobiles.

I will not here reiterate the panel opinion's more detailed analysis of the decisions of the other circuits. Generally, they do not regard electronic surveillance itself of the vehicle or aircraft on the public road or airspace as invading any reasonable expectation of privacy (although some draw the line in favor of the individual's privacy insofar as evidence located through electronic surveillance continuing inside private premises).

With regard to the *initial placement* of the beeper on a vehicle or other private property, however, only one circuit (the First) has held that no warrant is required for installation upon a *vehicle*; but nevertheless that circuit requires the existence of probable cause as a prerequisite for installation of the beeper. *United States v. Moore*, 562 F.2d 106 (1st Cir. 1977) (holding additionally, however, that a warrant with probable cause is required to insert a beeper in a *container* to be carried into a home).

No circuit has held that reasonable suspicion alone may justify the installation of a beeper on private property without the consent of a person with proprietary or possessory interest therein. *All* circuits other than the First that have touched upon the issue (the Sixth, the Eighth, the Ninth, and

the Tenth) have either expressly held that a warrant is required for attachment of a beeper, *United States v. Bailey*, 628 F.2d 938 (6th Cir. 1980),[5] or have so considered (sometimes reserving the issue), in circumstances arising when evidence obtained through electronic surveillance has been admitted either because judicial authorization for the installation had first been secured before placement of the beeper, *United States v. Chavez*, 603 F.2d 143 (10th Cir. 1979), *United States v. Pretzinger*, 542 F.2d 517 (9th Cir. 1976); or else because either both probable cause and exigent circumstances justified placement of the beeper or else the initial placement on the property was made with the consent of a person with a proprietary or possessory interest in the property at the time of the placement (findings unnecessary to make, if indeed no warrant is required).

See: *Eighth Circuit: United States v. Bruneau*, 594 F.2d 1190 (1979) (consent); *United States v. Frazier*, 538 F.2d 1322 (1976) (probable cause plus exigent circumstances); *Ninth Circuit: United States v. Bernard*, 625 F.2d 854 (1980) (consent); *United States v. Dubrofsky*, 581 F.2d 208 (1978) (consent); *United States v. Miroyan*, 577 F.2d 489 (1978) (consent); *United States v. Curtis*, 562 F.2d 1153 (1977) (consent); *United States v. Hufford*, 539 F.2d 32 (1976); *Tenth Circuit: United States v. Clayborne*, 584 F.2d 346 (1978) (consent); *United States v. Shovea*, 580 F.2d 1382 (1978) (probable cause plus exigent circumstances).

The majority resolves the issue before us as concerning only a relatively easy weighing of the intrusiveness and nature of the unauthorized governmental invasion of private property, against the competing interest of government in law enforcement. Its bland resolution of that issue [6] differs from that of all other circuits and displays none of the privacy concerns expressed by their decisions (and indeed the other decisions of this circuit) that have approached the complex and sensitive Fourth Amendment problems raised by continuous and indefinite electronic surveillance of individuals through beepers placed on private property, with authorization or not, "because the beeper represents another step in the advance toward an Orwellian future," *Bailey, supra*, 628 F.2d at 947 (concurring opinion, Keith, J.). Surely, the majority opinion's indifference to the privacy concerns expressed by almost every other decision that has touched on the issue, as well as the scholarly discussions of the issue (cited in the panel opinion but not referred to by majority), reflects an insensitivity to Fourth Amendment values and principles as previously understood.

## IV.

The majority has extracted quotations and principles from decisions involving totally different concerns to reach its novel conclusion that indefinite and continuous executive trespass on private property is permissible upon the executive agents' reasonable suspicion alone, despite the absence of valid legislative or judicial authorization for such trespass. Upon analysis, the jurisprudential support for this conclusion approaches *nil*.

---

**5.** In *Bailey*, the initial attachment was made while the drum was in the government's possession. Nevertheless, the Sixth Circuit held that the continued electronic surveillance after the drum passed into the defendant's possession required a warrant founded on probable cause. The evidence thereby discovered was suppressed, even though a warrant had been secured, because it did not place a time limit on the surveillance.

In this circuit, the initial placement being lawful, the decisions would generally support a proposition that no further warrant was needed. See panel opinion, 622 F.2d at 746–47. But cf. *United States v. Lewis*, 621 F.2d 1382,

1388 (5th Cir. 1980) (where a warrant was obtained to authorize monitoring after initial placement of the beeper prior to the defendant's possession of the goods): "The installation of a beeper in goods physically possessed by the defendants might invade a Fourth Amendment privacy test, even if the beeper were never activated. There arguably is a right to enjoy the use of goods without the possibility of uninvited monitoring that an unactivated beeper would create."

**6.** H. L. Mencken is alleged to have once said, "For every complex problem, there is usually a simple answer—and usually it's wrong."

A. *The "Reasonable Expectation of Privacy" Test: Trespass irrelevant where the defendant has a possessory or proprietary interest in the property?*

The majority holds that, for Fourth Amendment purposes, it is irrelevant that the search by the governmental agents was accomplished by a trespass upon private property in which he had possessory interest, even though by reason of the subsequent continuing trespass the government maintained a continuous electronic surveillance thereafterwards on his movements, a surveillance that could have been maintained for an extended duration. The central error in the majority's premise is its ignoring as irrelevant the fundamental liberty of owning private property free of unauthorized governmental intrusion, a fundamental right especially enunciated in the Bill of Rights. Adopting the "reasonable expectation of privacy" test, the owner of a proprietary or possessory interest in private property is constitutionally entitled to expect that executive agents of government will not trespass upon his property without authorization and will not, by continuing to trespass, use his property to maintain electronic surveillance upon his movements.

The heart of the majority's holding are the following statements from its opinion:

The fourth amendment, in pertinent part, protects people's "persons, houses, papers, and effects, against unreasonable searches and seizures." Although originally viewed as protecting property rights of individuals, the Supreme Court has now rejected the idea that fourth amendment coverage turns on "arcane distinctions developed in property . . .

law." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430 [58 L.Ed.2d 387] (1978). Instead, the fourth amendment protects individuals from violations of their legitimate or reasonable expectations of privacy. *See id.; Katz v. United States*, 389 U.S. 47, 361, 88 S.Ct. 507, 516 [19 L.Ed.2d 576] (1967) (Harlan, J., concurring); *Jones v. United States*, 357 U.S. 493, 498, 78 S.Ct. 1253, 1256 [2 L.Ed.2d 1514] (1958). Expectation of privacy analysis is especially appropriate in cases like the instant one which involve an individual's rights with respect to an automobile. In *Cardwell v. Lewis*, 417 U.S. 583, 591, 94 S.Ct. 2464, 2470 [41 L.Ed.2d 325] (1974) (plurality opinion), Justice Blackmun stated, "[I]nsofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry."

—— F.2d at ——, sl. op. at 255–256.

The authorities cited arise in greatly distinguishable circumstances and do not support the majority's conclusion that the owner of private property may not reasonably expect that governmental agents will not without authorization intrude upon his property. Before so demonstrating, however, I observe the following: *A.* The "pertinent" Fourth Amendment provisions are not only the excerpt cited by the majority but also the concluding clause that (as interpreted) requires that, other than in clearly delineated exceptional circumstances not here presented, no search or seizure shall be made except by warrant issued upon probable cause;[7] *B.* We are not here concerned as in *Rakas* with any "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like," 439 U.S. at 143, 99 S.Ct. at 430 (fleshing out the

---

**7.** The Fourth Amendment provides in full:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A central technical error in the majority's opinion is that, having conceded that a search

of the defendant's own property occurred, it does not even refer to the controlling constitutional interpretations that "the most basic constitutional rule in this area is that 'searches conducted outside the judicial process without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions'." *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

context of the catch-phrase quoted by the majority), but instead with a fundamental attribute of individual liberty guaranteed by our Constitution, i. e., the ownership of private property free of unauthorized governmental intrusion.

The authorities cited do not support the conclusion of the majority that a person with a proprietary or possessory interest in a motor vehicle cannot complain of a search founded on a trespass of governmental agents, when the deciding judges may determine that he had no reasonable expectation of privacy because of the nature of his property (an automobile) and that the intrusion was minimal in degree (attaching a beeper to the exterior).

*Katz*, as previously noted (see note 4 *supra* ), disregarded ancient niceties of tort or property law to hold that, *despite* the absence of a trespass (the previous determinant of a Fourth Amendment violation), a person in a telephone booth had a reasonable expectation of privacy against electronic eavesdropping. It was not intended to and it did not alter the basic Fourth Amendment protection against trespassatory searches of private property by governmental agents, a basic concept not intended to be altered by *Rakas* (see below) insofar at least as trespassatory searches complained of by a defendant with a possessory or proprietary interest in the property searched. See also original panel opinion, 622 F.2d at 749–51.

*Jones* held that probable cause is not sufficient reason to search a residence; a warrant also must be secured. I can find nothing in its language or holding that supports the majority's conclusion. Rather, if anything, it supports the dissenting view.

*Rakas*, of course, is the primary authority for the majority's view. *Rakas* does enunciate the "legitimate expectation of privacy" test as the primary criterion by which to determine Fourth Amendment violations. The issue before the court was whether a mere passenger in an automobile could complain of evidence seized by an unlawful search of the automobile. The core holding was that the defendant passengers had no

legitimate expectation in the search of the automobile *because* they had no possessory or proprietary interest in the property searched: "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a *third* person's premises has not had any of his Fourth Amendment rights infringed." 439 U.S. at 133, 99 S.Ct. at 425 (italics supplied).

The Court thus held that a person *without* a possessory or proprietary interest in property may have no legitimate expectation of privacy that is offended by a search in violation of the Fourth Amendment. In so doing, the Court rejected the test suggested in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, that any person "legitimately on the premises" was aggrieved by an unlawful search. It is important to note, however, that in rejecting the *Jones* test as overbroad, *Rakas* expressly and repeatedly explained with approval the result in the decision—the evidence against Jones was suppressed, it having been seized in his friend's apartment, to which he had a key and for use of which he had permission—as based on Jones's legitimate expectation of privacy in the premises searched arising from his possessory interest therein. 439 U.S. at 140, 142, 148, 88 S.Ct. at 429, 430, 433.

*Rakas* may be authority for the proposition that one *without* a possessory or proprietary interest in property searched has no reasonable expectation of privacy that is offended. It is simply not authority for the non-sequitur that one *with* such property interest likewise has no reasonable expectation of privacy. And, indeed, *Rakas* went to pains to state the contrary quite plainly:

> Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book II, Ch. I, and

one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude.[8]

439 U.S. at 144, 99 S.Ct. at 431 (n.12).

Finally, the majority cites *Cardwell v. Lewis.* The decision is not authority for the proposition that violation of a non-ownership privacy interest alone raises Fourth Amendment implications with regard to the search of a motor vehicle. The ultimate issue there involved whether the police were required to secure an additional warrant to take paint scrapings from an automobile previously lawfully seized and searched for probable cause under exigent circumstances, when they had been entitled for these same reasons to search the car itself on the public street. The plurality opinion of the Court (there were four dissenters and one concurrence that did not reach the merits) held that, under those circumstances, the taking of the paint scraping founded upon probable cause did not violate any Fourth Amendment privacy interest. The decision is certainly not authority for the proposition that executive agents may, without warrant or probable cause—exigent circumstances, commit a trespass upon a motor vehicle for the purpose of securing evidence. See IV *B infra* for more extensive discussion of *Cardwell.*

In summary, the authorities relied upon by the majority, either singularly or in combination, do not support its conclusion that one with an ownership right in a motor vehicle does not have any legitimate expectation of privacy that is offended by a warrantless investigatory trespass upon its exterior by executive agents.

B. *Does an individual have any reasonable expectation of privacy that is offended within the meaning of the Fourth Amendment when a trespassatory search is made of his vehicle's exterior in order to afford continuous surveillance of indefinite duration of his movements thereafterwards?*

The majority concludes that the momentary trespass committed by the installation of a beeper on the exterior of a person's automobile, for purposes of following his movements thereafterwards, does not offend any reasonable expectation of privacy recognized by our society. In Part II of this dissent, I have noted what I view to be an erroneous analysis in considering the momentary trespass as the only privacy invasion rather than also the subsequent continuous electronic surveillance of unrestricted duration, judicially unauthorized and not judicially supervised. In Part IV *A* I have noted what I view to be the majority's error in disregarding as irrelevant for Fourth Amendment purposes the trespassatory invasion by executive agents of property in which a defendant has possessory or proprietary interests—the violation of a right to privacy against the government with regard to property privately owned that is not only reasonable but is also guaranteed by our Constitution. My purpose in *B* below is to note briefly the inapplicability of the authorities from which the majority's novel Fourth Amendment view is derived.

The majority seems to principally rely upon expressions in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), on the language and holding of *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), and in the holding of this court in *United States v.*

---

**8.** The Court continues, *Id.*

Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in *Jones, supra,* and *Katz, supra.* But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the pres-

ence or absence of the privacy interests protected by that Amendment. No better demonstration of this proposition exists than the decision in *Alderman v. United States,* 394 U.S 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), where the Court held that an individual's property interest in his own home was so great as to allow him to object to electronic surveillance of conversations emanating from his home, even though he himself was not a party to the conversations.

*Johnson,* 431 F.2d 441 (5th Cir. 1970) (en banc). Of these decisions, in my opinion, only the latter is relevant to the issue before us—and its narrow holding that the Fourth Amendment is not violated by the opening of a car door by a police officer to verify the identification of a vehicle that he had reasonable cause to believe was stolen does not afford much guidance to our present decision. Here a much more egregious and continuous trespass was committed by the executive agents,[9] and here they had at most reasonable suspicion to believe that the person on whose property they trespassed was engaged in criminal activity.

*Cardwell,* on casual reading, likewise seems relevant. Even if so, it would not be persuasive authority because of the great dissimilarity of the issues. For reasons to be noted, I doubt its relevancy to the present issue.

As read by the majority, *Cardwell* holds that a momentary scraping of paint from the exterior of an automobile parked on the public street does not offend any reasonable expectation of privacy; any passerby could do the same, so to speak. By itself, the different nature of the intrusions (see II *supra*) would indicate that the present continuing trespass is not governed by *Cardwell.* However, more to the point, the technical trespass in *Cardwell* occurred upon a vehicle already lawfully impounded by the police for probable cause with exigent circumstances, a vehicle that for these same reasons the police could have searched prior to its removal to the impoundment lot. The

decision may easily be read to hold that, where there was probable cause and exigent circumstances to search the vehicle at the time it was lawfully seized in its *entirety,* then the removal of the paint *with probable cause* (specifically required by *Cardwell*) *after* impoundment did not offend the defendant's Fourth Amendment rights.[10] In any event, *Cardwell's* holding cannot be said to support the scraping of paint, let alone the placement by trespass of a beeper, upon a vehicle in the public street upon reasonable suspicion alone and without a warrant or probable cause and exigent circumstances.

The excerpts from *Chadwick* quoted by the majority merely repeat the truism concerning the diminished expectation of privacy in motor vehicles, and in the *Chadwick* text the decisions cited to support the statements concern warrantless searches of motor vehicles upon *probable cause,* and they arise in situations foreign to the issue before us. The actual holding in *Chadwick* *affirmed* the suppression of evidence seized as the result of a warrantless search of a footlocker, although the footlocker itself had been lawfully seized and although the agents had probable cause to believe that the footlocker contained marijuana. *Chadwick* does not really provide any basis for the en banc holding; to the contrary.

Additionally, however, *Chadwick* contains a most eloquent statement of the historic purposes of the Fourth Amendment to impose judicial control over executive searches

**9.** Actually, in *Johnson,* the police officer had permission from the defendant's wife to examine the vehicle more closely and to look at the serial plate on the vehicle. See *Johnson* panel opinion, 413 F.2d 1396, 1399 (1969).

**10.** The vehicle had already been lawfully impounded by the police for probable cause and in exigent circumstances. The issue was whether the police should additionally have secured a warrant before taking paint scrapings from the exterior. The car had been removed from the public street, where any passerby could likewise have momentarily touched the vehicle to remove the scrapings. The court held: "Under circumstances such as these, *where probable cause exists,* a warrantless examination of the exterior of the car is not

unreasonable under the Fourth and Fourteenth Amendments." 417 U.S. at 591, 94 S.Ct. at 2471 (italics supplied).

As a necessary antecedent to this ruling, the court also found that the vehicle had been lawfully impounded upon probable cause and in exigent circumstances, 417 U.S. at 592–95, 94 S.Ct. at 2470–72. I read its ruling as being to the effect that, since the police had probable cause and exigent circumstances to seize and search the car at the time they impounded it from the public street, they could also make a warrantless examination of its exterior after they had impounded it. See *Chambers v. Monroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, cited by the majority as the basis for this holding.

of private property. 433 U.S. at 6–11, 97 S.Ct. at 2481–83. These observations are of especial relevance to the issue presently before the en banc court, where executive agents without legislative or judicial authorization trespass upon private property and maintain by this continuing trespass an electronic surveillance of a nature and duration subject to no judicial supervision.

*C. Reasonable suspicion alone, without a warrant or exigent circumstances, justifies executive agents in the investigatory trespass committed by installing a beeper on an automobile for purposes of continuous surveillance?*

Without (as will be seen) any jurisprudential foundation, the majority concludes that reasonable suspicion alone may justify executive agents in installing a beeper upon an automobile in which the defendant has a possessory interest, for purposes of continuous surveillance (of indefinite duration). The majority reaches this startling conclusion by balancing the individual's allegedly minimal complaint about the invasion of privacy in his automobile against the governmental interest in eliminating illegal drug manufacture. Again, the authorities cited do not support the conclusion.

In the first place, the balancing argument adopted would enable the government to dispense with the Fourth Amendment warrant and probable cause requirements in almost all cases involving serious criminal activity. In requiring that probable cause (although no warrant) was required for installation of a beeper, the First Circuit in *United States v. Moore, supra,* rejected a similar balancing contention for convincing reason, 562 F.2d at 111 (citations omitted):

> Conduct which violates the fourth amendment is not made legal merely because it helps ferret out crime. If that were so, any invasion of privacy would be accepta-

ble if it helped the police. It is true that the reasonableness of a search and seizure is sometimes said to involve balancing the Government's interest in the intrusion against the individual's interest in privacy. But under the Government's formulation, we are not asked to balance the competing interests but simply to ignore the individual's interest altogether.

In reaching the conclusion that reasonable suspicion alone of executive agents may entitle them to install a beeper on an automobile, the majority does not refer to the warrant requirement of the Fourth Amendment nor the basic constitutional rule that a warrantless search (which the majority admits this was) is *per se* unreasonable and must be justified as falling within the few recognized well-delineated exceptions. See note 7, *supra.* Instead, it contents itself with a cryptic reference to *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (the determination of Fourth Amendment rights of inmates of a prison), *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (quashing as unconstitutionally obtained evidence obtained from a stop near the border of a vehicle containing Mexican-appearing passengers, but indicating that reasonable suspicion for articulated reason would suffice for a momentary stop to inquire as to the identification of the persons), and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (officer informed that suspect is armed may conduct a limited search for arms if he has reason to believe that the suspect is armed and dangerous).[11] The decisions cited, for the reasons indicated by the parenthetical summary of their holdings, simply cannot be regarded as authority that the Fourth Amendment warrant-probable cause requirements may be dispensed with for installation of a beeper in what is in essence a routine and traditional type of criminal investigation.

---

[11]. The majority also relies for the reasonable suspicion standard upon decisions that concern customs searches at the border expressly authorized by statute and traditionally not subject to the Fourth Amendment's warrant-probable cause requirements. *United States v. Afana-*

*dor,* 567 F.2d 1325 (5th Cir. 1978); *United States v. Smith,* 557 F.2d 1206 (5th Cir. 1977); *United States v. Himmelwright,* 551 F.2d 991 (5th Cir. 1977). I see no reason to discuss the obvious inapplicability of these decisions.

*Conclusion*

The Fourth Amendment requires that no individual's person or property shall be searched except upon warrant founded upon probable cause, a constitutional command rigorously enforced absent exigent circumstances, save in traditionally recognized exceptions or circumstances (e. g., border searches) into which this routine criminal investigation does not fall. The majority concedes that there were no exigent circumstances and that for Fourth Amendment purposes the present implantation of the beeper is a search. It nevertheless requires neither warrant nor probable cause, only reasonable suspicion by the executive agents for the search by these agents. The latter, without legislative or judicial authorization, committed their search by a trespass upon property in which the defendant had a possessory interest, and in violation of state trespass statutes.[12] I find no support in the jurisprudential interpretations for the majority's conclusion that the defendant had no reasonable expectation of privacy in his vehicle and that the Fourth Amendment was not violated by the trespass of these agents of the executive, which enabled them to maintain continuous electronic surveillance of his movements of indefinite duration, completely without statutory or judicial authorization

and subject to no judicial supervision as to the reasonableness of its extent or duration.

I therefore respectfully dissent.

GODBOLD, Chief Judge, with whom KRAVITCH, FRANK M. JOHNSON, Jr., POLITZ, HATCHETT, RANDALL, TATE, THOMAS A. CLARK and JERRE S. WILLIAMS, Circuit Judges, join, dissenting:

I adhere to the established jurisprudence requiring that a search be made with a warrant issued upon proper showing to a magistrate unless there is probable cause plus exigent circumstances.[1]

The majority cut new ground by an analysis that runs this way. They accept that the appropriate inquiry is whether Michael's legitimate or reasonable expectations of privacy were violated. Pursuing this inquiry they first conclude that Michael's expectation of privacy was diminished because a vehicle was involved and because it was parked in a public place. Next they examine the degree of intrusion and describe it as minimal. Having reached these preliminary conclusions as a predicate, the majority find that the agents had reasonable suspicion that Michael was engaged in criminal activity and that this justified placement (and monitoring) of the beeper without the necessity for a warrant. The subsequent monitoring is then further justi-

---

**12.** The electronic surveillance took place in Georgia in violation of that state's civil and criminal statutes. Aside from providing a private damage action for violation of the "absolute right" of enjoyment of real and personal private property, Code of Georgia § 105–1401, see §§ 105–1406, 105–1703, Georgia provides severe criminal penalties (not less than one nor more than five years penitentiary imprisonment) for invasions of privacy through unauthorized electronic and other surveillance. Code of Georgia, §§ 26–3001 through 3010. Among other activities made criminal, the act prohibits any person from going "on or about the private premises of another or any private place for the purpose of invading the privacy of another by . . . secretly observing their activities," § 3001(c), or from using "any instrument or apparatus, without the consent of all persons observed, to . . . record the activities of another which occur in any private place and out of the public view," § 3001(b), or from committing "any other acts of a nature similar to those set out . . . which invade the privacy

of another," § 3001(f). Law enforcement officers are permitted to undertake electronic surveillance only upon probable cause and after written application approved by a judge of the state circuit court, provided the warrant specifies with particularity the devices to be used, and the purpose, duration and circumstances of use permitted, as well as other specifics. § 3004. Evidence of this nature is admissible in state court only if obtained in conformity with the statute. § 3004(g).

I am unaware of any principle that justifies federal judges to hold that without federal statutory or other authorization federal executive officers may upon their reasonable suspicion alone violate state criminal statutes in order to obtain evidence for use in a federal prosecution.

1. None of the other exceptions to the warrant requirement, such as search incident to arrest, is even arguably involved.

fied as not invading Michael's privacy interest because it only assisted the agents in their performance of lawful surveillance and because the van traveled public roads and was exposed to public view.

In the final step, the majority balance the governmental and public interest in eliminating illegal drug manufacturing against the "minimal" intrusion and find that the warrantless installation and subsequent use of the beeper were "reasonable."

I agree that the Supreme Court has made clear that protection of a legitimate or reasonable expectation of privacy is the proper inquiry.[2]

Was Michael's privacy interest limited and the intrusion nominal? It is simply not an answer to these questions to say "all that is involved is an automobile and everybody knows that automobiles are used publicly," and "all the officers did was to aid in finding out what they could have observed visually anyhow." Usually, in defining the contours of legitimate or reasonable expectation of privacy, one must necessarily consider both the nature of whatever corporeal item is involved and the kind of governmental action that is claimed to have improperly invaded the privacy interest that the victim has in the item. It is obvious that an automobile moves freely in public and parks in public places and, because it is open to view, the owner has no reasonable or legitimate expectation that the exterior of the vehicle will not be seen through visual observation. Furthermore, the owner has no reasonable expectation of privacy in the numbers on his license plate and the identification numbers fixed to the door post or stamped on the frame or on the engine block. A court might well sustain an officer's running his finger down the side of a publicly parked car to collect a dust sample. The courts have even sustained taking a paint sample from the exterior surface of a car previously seized and impounded.[3] But the nature and use of the tangible item are

not the end of the inquiry. One must also ask "privacy against what kind of governmental action?" Or, in the Supreme Court's phrase, what is the "scope of the intrusion"? *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447, 481 (1979). It is only when this question is asked that we conclude that the public use of a vehicle and its exposure to public view do not justify searching interior portions of the vehicle not in plain view without either a warrant or probable cause plus exigent circumstances. The same applies to a suitcase. It is movable, generally used in full public view, freely handled and touched by common carrier personnel while the owner is traveling by public transportation. There is no privacy interest protecting against observation of its exterior. But no one any longer seriously argues that the suitcase's qualities of mobility and public exposure permit police to open it without a warrant or exigent circumstances plus probable cause.

It is both inaccurate and disingenuous to treat the governmental intrusion in this case as limited to the mere transitory and *de minimis* trespass committed by attaching a small object to the van. The significant intrusion arises from the capacity of the small device to emit a signal that identifies to police the location of the vehicle. The officers, by attaching the electronic device, made the van into a mechanism for reporting to the government its own location and necessarily the location of persons occupying it. The government, without Michael's consent or knowledge, made him into a broadcaster of the details of his own affairs. The listener is the government. The signals are simple. But they are damning. This is far from minimal. It strikes at the heart of the protection that the Fourth Amendment affords to the person and his affairs and effects in the relationship between him and his sovereign. This signifi-

---

**2.** My approach is different from that of Judge Tate—if different at all—only in degree. His convincing dissent emphasizes the invasion of property interests while I prefer to emphasize governmental invasion of the individual's expectation of privacy.

**3.** *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1970).

cant intrusion into Michael's affairs cannot be justified on the ground that the electronic device was attached to his automobile and the privacy interest in an automobile is not strong.[4]

Actually, the government's action comes close to impinging on interests protected by the Fifth Amendment. The government, by a trespass minimal in the physical sense, causes the unwitting suspect to become a reporter to the government of information incriminating to himself.[5] We view with loathing totalitarian systems that require a person traveling from one place to another to check in with the police and report on his movements. The majority treat as trivial the privacy interest against one's unwittingly but continuously making the same kind of report through an electronic device attached to the property by which he moves from place to place. I do not consider this trivial.

Significantly, while eschewing common law property concepts as irrelevant, the majority employ these same concepts to conclude that the officers' actions here were merely a minimal, technical and transitory trespass. In a property sense the majority are correct. But these property-rooted justifications tell only a fraction of the story.

The majority refer, n. 14, to the pen register case[6] in which installation and use of a register at the telephone company's central office to record numbers dialed by the defendant did not violate the Fourth Amendment because the telephone user always conveys to the telephone company numerical information that can be permanently recorded at the will of the company, and the user has no reasonable expectation that the telephone company will not disclose this recorded information to police. If Michael were a user of a commercial shortwave radio system by which he could talk from his van to his office, and his transmissions could be taped by the owner of the system in order to compute user charges on a time basis, Michael might not be able to complain if the police put a bug at the owner's headquarters to pick up what Michael said over the air. But Michael is not a subscriber to a commercial service, the use of which may involve giving up his privacy interests. He is not even knowingly sending signals of any kind to anyone.

Surveillance of the car through monitoring the attached beeper cannot properly be justified on the ground that this merely aids officers who could visually surveil the vehicle. Freedom to visually observe does not of itself justify other means that might reveal the same information. If for no other reason, the beeper's scope is wider than the surveilling eye can visually observe. It does not shut off if the van enters private property and leaves public view so that it may no longer be seen. It does not turn off when the owner parks the van in his garage and locks the garage door to protect against entry by others, including police officers. If an officer broke into a car and secreted himself in the back seat in order to find the car's route and destination, we would summarily reject an argument that his act was constitutionally justified because another officer might have obtained the same information by following the car. Moreover, this "alternative availability" rationale (a sort of first cousin to the discredited "inevitable discovery" rule) ignores the interest that one has against being made into a self-incriminating broadcaster of his own affairs.

The standard that reasonable suspicion of criminal activity is a justification for a warrantless search is newly created in this case. No case is cited to support it.[7] In oral

---

4. Surely the government cannot attach a camera to one's bedroom window and photograph those inside and justify it on the ground that windows are visible to all and made to see through and thus enjoy no privacy. The Fourth Amendment protects people not chattels.

5. This is different from dye on the bank's bait money. The bank robber has no privacy interest in the loot.

6. *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

7. In another part of the opinion the majority refer to *Adams v. Williams*, 407 U.S. 143, 92

argument government counsel were asked to supply cases supporting this theory. Counsel could come up with nothing. Sitting en banc we have the power to create this new rule subject to Supreme Court review. But there should be some better basis than the mischaracterization of the intrusion as a nickel and dime trespass, and the fact that the police were trying to catch illegal drug manufacturers. As surely as the sun rises, reasonable suspicion will now be urged as justification for intrusions that even the majority would accept as serious, and searches heretofore barred by the Fourth Amendment will be urged as valid because done in pursuit of all types of suspected criminal activity. In fact, few searches are made for any reason other than attempts to catch suspected law violators.

In their final point the majority hold that the governmental interest in eliminating illegal drug manufacturing is to be balanced against Michael's expectation of privacy to determine if the Fourth Amendment has been violated. Justifying a search on the basis that it is handy for the police is a new theory. In this country the balancing is done in the magistrate's office through a request for a warrant based upon probable cause, or under circumstances so exigent and knowledge sufficiently strong that we dispense with the requirement of a warrant. *Bell v. Wolfish, supra,* held that visual body cavity searches in a prison could be conducted on inmates who had just had contact visits with persons from outside the prison, without the necessity of probable cause. Prison officials testified that the searches were necessary not only to discover but also to deter the smuggling of weapons, drugs and other contraband into the institution. The court dealt with what is called "a unique place fraught with serious security dangers," in which smuggling of money, drugs, weapons and other contraband were

common occurrences and inmate attempts to bring these items into the facility by concealing them in body cavities were documented in the record. No such unique facility or problem is involved in this case. The only interest in the government's end of the "balancing" to which the majority refer is that this is a drug case. No special need was shown for the information sent by the beeper. Indeed, one of the grounds on which the majority justify the governmental action is that the police could have obtained essentially the same information by visual surveillance.

---

S.Ct. 1921, 32 L.Ed.2d 612 (1972) as justifying an "intermediate response" based on something less than probable cause. In *Adams* the officer reached through the window of a car and removed a loaded pistol from the defendant's waistband. This action was held valid as "a limited intrusion designed to insure [the

officer's] safety," under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Probable cause then existed to arrest Williams for unlawful possession of the weapon. The present case is unrelated to the limited protective actions authorized under *Terry.*