**UNITED STATES of America**

v.

**Oliver Wendel EMANUEL.**

**Cr. No. H–83–94.**

United States District Court,
S.D. Texas,
Houston Division.

Oct. 17, 1983.

Lawrence D. Finder, Asst. U.S. Atty., Houston, Tex., for U.S.

Deborah Gottlieb, Houston, Tex., for defendant Emanuel.

## ORDER

CARL O. BUE, Jr., District Judge.

Defendant, Oliver Wendel Emanuel, a United States Postal employee, is charged in a single count indictment with unlawful detention of packages which were entrusted to him and intended to be conveyed by mail in violation of 18 U.S.C. § 1703(a).[1] The events alleged in the indictment occurred on or about November 9, 1982. Defendant has filed a motion to suppress evidence obtained as a result of a purportedly illegal installation of electronic tracking devices (hereinafter "beepers") in the two packages that are the subject of the indictment returned against the defendant. Specifically, the motion seeks to exclude: (1) all statements made by the defendant from November 8, 1982, until the present; (2) all route deviations observed by postal inspectors on November 9th and 10th, 1982; and, (3) any evidence resulting from placement of the purportedly illegal beepers in the two packages described in the indictment. A suppression hearing was held on September 2, 1983, to determine the facts surrounding both the installation and subsequent monitoring of the beepers which led to defendant's arrest. The Court, having considered the facts adduced at the suppression hearing, and having navigated its way through the growing quagmire known as "beeper jurisprudence", is of the opinion that the motion should be denied for the reasons stated below.

### The Facts

Defendant was employed as a letter carrier for the United States Postal Service (hereinafter "Postal Service") at the time the alleged offense occurred. It was his duty to pick up and deliver mail from various assigned routes. He used his personal automobile, a Volkswagen Beetle or "Bug", to make his runs, and he had a "driveout agreement" with the Postal Service whereby he was compensated at an hourly rate for the use of his vehicle.

---

1. Title 18, United States Code, Section 1703(a) states in pertinent part that:

"Whoever, being a Postal Service officer or employee, unlawfully secretes, destroys, detains, delays ... any letter, postal card, package ... or mail entrusted to him or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any carrier ... of the Postal Service ..." shall be guilty of an offense against the United States.

Due to complaints from postal customers living on defendant's assigned route, number 1642, that mail was either not being received or was being received with evidence of pilfering or rifling, the United States Postal Inspectors initiated an investigation of the defendant.

The heart of the investigation centered upon two test parcels fashioned by Postal Inspector Willie Williams. Each test parcel was equipped with a beeper along with certain valuable items. One parcel was labeled "Rosinbaum Jewelry & Watch Co., P.O. Box 225511, Dallas, Texas, 75265", and the other "Torres Coin Company, P.O. Box 457, San Antonio, Texas, 78292". Refer to Government's Hearing Exhibits One and Two. On November 9, 1982, postal inspectors, without court authorization, placed the beeper test parcels in a mailbox on the defendant's assigned route and waited for him to "tap" or empty the mailbox. Subsequently, the postal inspectors began monitoring the signals emitted by the beepers with portable VHF radios.

At approximately 11:55 A.M. on the same day, the postal inspectors observed the defendant tap the box and place the mail into the trunk of his car. The defendant was tracked on his assigned route for approximately one and a half hours both visually and by monitoring the beepers. However, at approximately 1:50 P.M., the inspectors lost all contact with him. Efforts to locate the defendant on his assigned route were futile. After determining that defendant had not returned to his assigned station to "clock out" and turn in the accountable mail, an Inspector Santa Cruz drove to defendant's home to ascertain whether the defendant was there.

As Inspector Santa Cruz approached defendant's residence, the beeper signals, which were previously lost, reappeared and gradually grew stronger. Upon reaching the defendant's home, the inspector saw the defendant's car parked near the house. Although the signal received on the inspector's radio indicated that the beepers were in the vicinity of defendant's house, there was no way to pinpoint their exact location, *i.e.,* the defendant's car as opposed to the house, and there was no evidence produced at the hearing that the parcels were ever in Emanuel's home. Furthermore, monitoring could not be determinative of the defendant's whereabouts; the beepers' sole function was to indicate the approximate vicinity of the parcels.

Meanwhile, Inspector Williams asked defendant's supervisors to drive to defendant's home in order to determine why he had not clocked out at 3:30 P.M. as scheduled and turned in his accountable mail and keys. Following interrogation of the defendant, the supervisors left defendant's residence empty-handed and reported to Inspectors Williams, Santa Cruz and Swindle who were parked around the corner out of sight of defendant's house.

Knowing only that the beepers were in the vicinity of defendant's home or car, the three inspectors monitored the beepers' signals the entire night. At approximately 5:45 A.M. the next morning, the beepers transmitted a signal indicating movement. Shortly thereafter, the inspectors observed the defendant driving away from his home. The inspectors followed the defendant to the Jensen Drive Post Office, a station to which he was not assigned, where they stopped the defendant and placed him under arrest. He was read his *Miranda* rights, and 113 pieces of first class mail were recovered from the trunk of his car, including the two test parcels. The defendant subsequently made a statement to the inspectors upon arrival at the inspectors' office.

### Untying The Gordian Knotts

The United States Supreme Court recently added to the beeper case law in *United States v. Knotts*, —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). In *Knotts*, Minnesota law enforcement officers were notified that certain individuals were purchasing chloroform, one of the so-called "precursor" chemicals used to manufacture illicit drugs. After obtaining the consent of a chloroform manufacturer/seller to place a beeper inside a drum of chloroform, the

drum was sold to the suspects. Officers followed the car in which the drum had been placed using both visual and beeper surveillance. After evasive maneuvers, the officers lost all contact with the suspects. The beeper signal was picked up again about an hour later with the assistance of a monitoring device in a helicopter. The signal was stationary and the location identified was a cabin occupied by Knotts near Shell Lake, Wisconsin. The officers secured a search warrant and searched the cabin, where they discovered a drug laboratory.

Knotts was convicted in the district court for conspiring to manufacture in violation of 21 U.S.C. § 846, after his motion to suppress evidence based on the warrantless monitoring of the beeper was denied. The Eighth Circuit Court of Appeals reversed, holding that the monitoring of the beeper was prohibited by the Fourth Amendment. 662 F.2d 515. The United States Supreme Court reversed the court of appeals, holding that the monitoring of beeper signals was neither a "search" nor a "seizure" within the scope of the Fourth Amendment.[2] 103 S.Ct. at 1087.

The Fifth Circuit has also recently had an occasion to send its own signals in the "beeper jurisprudence" area. In *United States v. Butts,* 710 F.2d 1139 (5th Cir.1983), the Court, in a 2–1 decision,[3] held that the Fourth Amendment demands that, in the usual case, a warrant based upon probable cause is required to install and maintain a beeper within the interior of a vehicle or other conveyance for an extended period of time. In so holding, the Court created a standard for interior beeper installation that is different from that required for exterior attachment. 710 F.2d at 1151. This is so because in *United States v. Michael,* 645 F.2d 252 (5th Cir.) (*en banc*), *cert. denied,* 454 U.S. 950, 102 S.Ct. 489, 70

L.Ed.2d 257 (1981), the Fifth Circuit held that government agents do not need a warrant prior to installing a beeper to the *exterior* of a vehicle. Further, in reaching its decision, the *Butts* Court engaged in a review of Fifth Circuit "beeper jurisprudence" as well as a review of *Knotts.* With regard to *Knotts,* the Court stated:

> *Knotts* clarified the present state of "beeper jurisprudence" in two respects. First, the *Knotts* Court employed a bifurcated analytical framework for examining the fourth amendment implications of beeper use, separating the installation or attachment of the tracking device from the monitoring of its signal. Second, *Knotts* focused [solely] on the monitoring aspect of beeper use and concluded that monitoring—as distinguished from installation—impinged no fourth amendment values.

710 F.2d at 1145–1146. The Court did not read *Knotts* to say, however, that monitoring of a beeper is permissible regardless of the circumstances surrounding its installation. 710 F.2d at 1146. The Court stated that even if monitorial use of a tracking device does not constitute a search or seizure, the installation and maintenance of the device may violate the Fourth Amendment. *Id.* Under the reasoning employed by the *Butts* Court, the threshold question presented is whether the installation of a beeper is a "search" or "seizure" under the Fourth Amendment. *Id.*

### The Fourth Amendment

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be

---

**2.** This Court notes that the installation of the beeper was not an issue in *Knotts.* "Respondent does not challenge the warrantless installation of the beeper in the chloroform container, suggesting in oral argument that he did not believe that he had standing to make such a challenge...." 103 S.Ct. at 1084.

**3.** Chief Judge Clark, dissenting, relies on *Knotts* for the proposition that the monitoring of the beeper in the plane was not a search or seizure at all. 710 F.2d at 1153.

searched, and the persons or thing to be seized.

U.S. Const. Amend. IV. In *Knotts,* the Supreme Court addressed the Fourth Amendment issue by stating:

In *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), we elaborated on the principles stated in *Katz* [*v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576]:

"Consistently with *Katz,* this Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action. [Citations omitted]. This inquiry, as Justice Harlan aptly noted in his *Katz* concurrence, normally embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,' 389 U.S., at 361 [88 S.Ct., at 516]—whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances. *Id.,* at 353 [88 S.Ct., at 512]. *See Rakas v. Illinois,* 439 U.S. [128], at 143–144, n. 12 [99 S.Ct. 421 at 430, 58 L.Ed.2d 387]; *id.,* at 151 [99 S.Ct., at 434] (concurring opinion); *United States v. White,* 401 U.S. [745], at 752 [91 S.Ct. 1122 at 1126, 28 L.Ed.2d 453] (plurality opinion)." 442 U.S., at 740–741, 99 S.Ct., at 2580 (footnote omitted).

The governmental surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways. We have commented more than once on the diminished expectation of privacy in an automobile: "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." [cites omitted].

103 S.Ct. at 1085. The Supreme Court went on to hold that a person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. *Id.* Therefore, both *Knotts* and *Butts* teach this Court that in analyzing the constitutionality of the placement of beepers in the test parcels by the postal inspectors to monitor the movement of the packages, the Court must apply these established Fourth Amendment concepts in two phases: first, the attachment of the beepers and, second, its subsequent monitoring.

### No "If's", "Ands" or "Butts" About It

Before applying the law to the facts adduced at the suppression hearing, the Court notes that the defendant urges strenuously that the *Butts* case is dispositive of this case. Defendant argues that because the postal inspectors placed beepers inside packages that they knew the defendant would pick up and place inside his car, that, in effect, the postal inspectors were actually intruding into the interior of his vehicle and/or home of the defendant, thereby triggering the *Butts* requirement of a warrant based upon probable cause. This Court disagrees because unlike either the *Butts* or *Michael* cases, this case does not involve the actual installation of beepers in or on a vehicle. Rather, this Court characterizes this case as a "container" case as was *Knotts* and other Fifth Circuit cases. *See, e.g., United States v. Sheikh,* 654 F.2d 1057 (5th Cir.1981); *United States v. Lewis,* 621 F.2d 1382 (5th Cir.1980); *United States v. Pringle,* 576 F.2d 1114 (5th Cir.1978); *United States v. Bishop,* 530 F.2d 1156 (5th Cir.1976); and, *United States v. Perez,* 526 F.2d 859 (5th Cir.1976). These cases illustrate that different legal standards apply to different factual settings. Therefore, while *Butts* is informative, it is not dispositive.

Turning to the Court's application of the law to the facts, the Court finds that the beepers were lawfully installed at the time the test parcels were constructed by the

postal inspectors. No proprietary rights of Emanuel were invaded. He never owned the packages or had a right to possess the packages for an extended period of time. At most he was a temporary custodian of the packages or a bailee in an employer-employee context. Whatever proprietary rights he may have had as a temporary custodian of the packages, if any, were lost as soon as he deviated from his assigned route and failed to deliver the packages to their rightful destination. There was neither a need for a warrant to permit the installation of the beepers nor a reasonable expectation of privacy. As the Fifth Circuit stated in *United States v. Lewis, supra,* "... the Fourth Amendment does not prohibit the placement of a beeper in a drum or box before the defendant takes possession." (cites omitted) 621 F.2d at 1388. Given the lawfulness of the installation of the beepers, monitoring its signals to follow the parcels on public highways is not a violation of the Fourth Amendment. *United States v. Knotts,* —— U.S. ——, 103 S.Ct. 1081, 1983, 75 L.Ed.2d 55; *United States v. Michael,* 645 F.2d 252 (5th Cir.) (*en banc*), cert. denied, 454 U.S. 950, 102 S.Ct. 489, 70 L.Ed.2d 257 (1981).

Finally, in addition to the legal justification for the use of the beepers, the public interest in eliminating mail theft, especially theft caused by trusted government employees, appears to be a compelling reason in itself to permit whatever minimal intrusion that may have occurred. In balancing the public concerns served by the postal inspectors' use of the beepers to discover the predilections towards kleptomania of a government employee entrusted to safely deliver the mail come rain, sleet or snow, against the non-existent to minimal infringement of Emanuel's unfounded expectation of privacy when using his car pursuant to a "driveout agreement" with the Government, the Court concludes that the use of the beeper is entirely reasonable. Accordingly, the Court holds that the installation and monitoring of the beeper under these circumstances involved no violation of Emanuel's Fourth Amendment rights.

Therefore, his motion to suppress is denied. It is so ORDERED.